RIDOUT LYON + OTTOSON, LLP
CHRISTOPHER P. RIDOUT (SBN: 143721)
 E-mail: c.ridout@rlollp.com
CALEB MARKER (SBN: 269721)
 E-mail: c.marker@rlollp.com
HANNAH P. BELKNAP (SBN: 294155)
 E-mail: h.belknap@rlollp.com
555 E. Ocean Boulevard, Suite 500
Long Beach, California 90802
(562) 216-7380 Telephone
(562) 216-7385 Facsimile

*Attorneys for Plaintiff*

*(Additional Counsel Listed Below)*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLENE LONGEST, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GREEN TREE SERVICING, LLC, a Delaware limited liability company, GREEN TREE INSURANCE AGENCY, INC., a Minnesota corporation,<br><br>Defendants. | Case No.: 2:14-cv-8150<br><br>**CLASS ACTION COMPLAINT**<br><br>**(Jury Trial Demanded)**<br><br>1. Breach of Contract<br>2. Breach of Implied Covenant of Good Faith and Fair Dealing<br>3. Violation of California Unfair Competition Law, Business and Professions Code §17200, *et seq.*<br>4. Money Had and Received (Restitution) |

CLASS ACTION COMPLAINT

Plaintiff Carlene Longest ("Plaintiff"), by and through her undersigned counsel, on behalf of herself and all others similarly situated, brings the following Class Action Complaint against Defendants Green Tree Servicing, LLC ("Green Tree Servicing"), Green Tree Insurance Agency, Inc. ("Green Tree Insurance") (collectively "Green Tree" or "Defendants"), based upon information and belief and the investigation of counsel, except for information based on personal knowledge, and hereby alleges as follows:

## I.   INTRODUCTION

1.    This is a class action filed to redress injuries that Plaintiff and a class of California consumers have suffered and will continue to suffer as a result of the practices of Defendants relating to force-placed insurance policies.  Plaintiff and Class members allege that Defendants derive improper financial benefits by imposing force-placed hazard insurance policies on properties. In addition, Green Tree is charging residential borrowers for the "cost" of procuring force-placed insurance from Assurant Inc. ("Assurant") and its subsidiaries such as American Bankers Insurance Company of Florida ("ABIC"), but a portion of such "cost" is returned, transferred, kicked-back or otherwise paid to Green Tree and/or its related entities. Green Tree and/or its related entities do no meaningful work for the sums received, and therefore the payments amounts to an unearned kickback designed to encourage the referral of business at extraordinary high prices.  Plaintiff seeks to recover damages equal to the amount of the improper and inequitable financial benefit received by Defendants and/or their affiliates as a result of this anti-consumer practice, and to rescind the future collection of amounts charged against the mortgage accounts of residential borrowers but not yet collected.

2.    Lenders require borrowers to purchase and agree to maintain hazard insurance coverage on the secured property as a condition to funding home loans. Plaintiff was required to obtain and maintain hazard insurance as a condition to her mortgage.

CLASS ACTION COMPLAINT                                                    1

3.     In the event that borrowers, including Plaintiff, are unable to maintain hazard insurance policies, Defendants replace borrowers' policies with considerably more expensive policies provided by Assurant pursuant to a contract between Defendants, and Assurant, forcing borrowers to pay for the policies by diverting the monthly mortgage payments and/or debiting the borrowers' escrow accounts. These policies are known as "force-placed" or "lender-placed" insurances policies. Such policies provide less coverage and are substantially more costly (5 to 10 times the price) than the borrowers' original policies, which provide improper, undisclosed, and lucrative financial benefits and kickbacks to lenders/servicers and/or their affiliates, as well as to providers of force-placed insurance.

4.     Here, Defendants have engaged in a pattern of unlawful and unconscionable profiteering and self-dealing in regards to their purchase and placement of force-placed insurance policies in bad faith.

5.     In this action, Plaintiff challenges Green Tree's practice of purchasing force-placed hazard insurance from Assurant pursuant to agreements to obtain a commission or kickback, resulting in unauthorized, unjustified and unfairly inflated costs to the borrower for force-placed insurance in violation of law.  In doing so, Green Tree acted with bad motive and bad intentions and in order to penalize Plaintiff and the Class.

6.     As set forth in detail below, Defendants have engaged in unlawful, abusive and unfair practices with respect to force-placed insurance by receiving kickbacks in the form of purported  fees, payments, commissions, "rebates" and/or other things of value from providers of force-placed insurance.

7.     Upon information and belief, Green Tree entered into agreements with Assurant, pursuant to which Green Tree and/or its subsidiaries or affiliates typically receive a portion of the premiums for each force-placed insurance policy purchased for a borrower.  Moreover, upon information and belief, those arrangements are exclusive. Upon information and belief, Defendants have received more than $5

CLASS ACTION COMPLAINT                                                    2

million in kickbacks from FPI policies imposed on class members during the class period.

8.     In bringing this class action, Plaintiff does not challenge the rates filed by Assurant and/or any other insurance carrier.  Plaintiff does not challenge the rates of their force-placed hazard insurance provider as excessive.  Rather, Plaintiff challenges the manner in which Defendants selected Assurant and ABIC and their force-placed insurance products, the manipulation of the force-placed insurance process by Green Tree, and the impermissible kickbacks that were included in the premiums that were added to the balance of Plaintiff's and the Class members' mortgage loans.  Plaintiff does not complain that she was changed an excessive insurance rate; rather, she complains that Green Tree acted unlawfully and in bad faith and motive when it selected the particular insurance company and its particular rates and coverage, when other, more suitable options were available.

9.     Thus, while  Plaintiff does not challenge Green Tree's ability to force-place insurance policies and to charge fees/premiums for the same, Plaintiff challenges the manner in which Defendants manipulated the force-placed insurance process for  their  own financial gain, with bad motive, in breach of Green Tree's contractual duties and in violation of statutory and common law.

10.     At issue in this case is whether Defendants have been unjustly enriched by manipulating the force-placed insurance process so as to obtain unearned kickbacks and breached the express and/or implied terms of the mortgage contract (including the implied covenant of good faith and fair dealing) by unreasonably, unconscionably and unlawfully exercising  their  contractual discretion to manipulate the force-placed insurance process so as to obtain financial benefits for themselves at Plaintiff's and Class members' expense, and in turn, misrepresenting the true cost of insurance charged to class members and overcharging them beyond that permitted by the contract.  In this action, Plaintiff challenges Defendants' unlawful conduct and seeks compensatory damages, restitution for Defendants' unjust enrichment,

declaratory, injunctive and other equitable relief.

## II.   THE PARTIES

11.   Individual and representative Plaintiff Carlene Longest ("Plaintiff" or "Longest") resides primarily in Nipomo, San Luis Obispo County, California. Plaintiff is a member of the proposed Class.

12.   Defendant Green Tree Servicing, LLC ("Green Tree Servicing") is a Delaware limited liability company and wholly-owned subsidiary of Walter Investment Management Corporation ("WIMC").  It maintains its principal place of business at 345 St. Peter Street, St. Paul, Minnesota 55102.  Green Tree Servicing's agent for service of process in California is C T Corporation System, 818 West Seventh Street, 2nd Floor, Los Angeles, California 90017.

13.   Defendant Green Tree Insurance Agency, Inc. ("Green Tree Insurance") is a Minnesota corporation and wholly-owned subsidiary of WIMC.  It maintains its principal place of business and registered office at 345 St. Peter Street, St. Paul, Minnesota 55102.

## III.   JURISDICTION AND VENUE

14.   This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA") because at least one Class member is of diverse citizenship from Defendants, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest or costs.

15.   This Court has personal jurisdiction over Defendants because Defendants are licensed to do business in California or otherwise conduct business in the State of California, a substantial portion of the wrongdoing alleged by Plaintiff occurred in the State of California and this District, Defendants have sufficient minimum contacts with and/or otherwise have purposefully availed themselves of the markets of the State of California and this District such that it is fair and just for Defendants to adjudicate this dispute in this District.

CLASS ACTION COMPLAINT                                                                                 4

16.     Venue is proper in this District because Plaintiff is a resident of this District and a substantial part of the events, transactions, and/or omissions giving rise to the claims asserted herein occurred in this District; and, a substantial portion of Defendants' alleged wrongdoing is believe d to have occurred in this District.

## IV.    GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS
## A.    OVERVIEW OF FORCE-PLACED INSURANCE

17.     When a home loan is approved, the mortgage servicer typically requires the borrower, under the terms of the mortgage, to carry the proper amount of hazard or flood insurance on the property to insure it against any perils. While force-placed insurance has been part of the mortgage process for decades, the full extent of the previously undisclosed kickbacks, unearned commissions, and profit structures have only recently been uncovered.

18.     Each and every mortgage at issue in this litigation that is owned and/or serviced by Green Tree requires borrowers to purchase and agree to maintain hazard insurance coverage on their secured property as a condition to closing.

19.     Class members' mortgage contracts are standard-form Freddie-Mac or Fannie Mae contracts ("uniform instruments") of adhesion that contain the same or materially the same clauses (usually in Paragraph 5) addressing the lender's ability to force-place insurance, exercising its own discretion.

20.     In order to ensure that the mortgagee's interest in the secured property is protected, mortgage loan contracts typically allow the lender or third-party servicer to "force-place insurance" when the homeowner fails to maintain insurance; the amounts disbursed for the procurement of such insurance become additional debt secured by the mortgage. Paragraph 5 of Plaintiff's mortgage agreement contains such a provision affording Green Tree the authority to force-place their insurance in the event of a lapse. Thus, the failure of a borrower to maintain hazard insurance is clearly contemplated by the mortgage contract and such a failure by the borrower does not result in a material failure to perform under the mortgage contract.

CLASS ACTION COMPLAINT                                                          5

21.     This discretion afforded to Defendants to force-place insurance is limited by the bounds of reasonable conduct and by the express terms of the mortgage contract itself.  Defendants routinely exceed the bounds of reasonableness and the spirit, intent and letter of the mortgage contract itself by force-placing insurance in a manner and in amounts that are not required to protect the lender's interest in the property in an effort to reap profits from the borrower which are not required nor contemplated by the mortgage contract and through other conduct described herein with respect to the force-placement of insurance.

22.     The mortgage contract does not disclose that the lender or servicer, or their affiliates, will receive a "commission" or other compensation from the force-placed insurance providers for purchasing the insurance or that the commission will be based upon a percentage of the cost of the premium of the force-placed insurance. Furthermore, the mortgage contract does not disclose that the cost of the force-placed policy will incorporate certain costs not properly chargeable to the borrower.

23.     Any commissions received by Green Tree are unearned and unreasonably charged to class members as part of the force-placed insurance premiums.   No services are performed for these commissions.   Rather, any nominal services performed in relation to the placement of the force-placed policies are done by Assurant, not Green Tree.  Assurant is more than compensated for any services they perform through the portion of the force-placed insurance premiums they retain.  The payments to Green Tree are undisclosed and unauthorized kickbacks.

24.     Additionally, once a lapse in hazard insurance occurs, Plaintiff and the Class have no way of refusing the charges for the force-placed insurance premiums. Likewise, once a lapse occurs, and the lender or third-party servicer decides to force place insurance, Plaintiff and the Class have no way of retroactively placing the policy with a low cost insurance provider.   The decision is 100% that of the lender and Plaintiff and the Class are completely at the mercy of the lender to exercise its discretion in good faith when force placing the policy and selecting the insurance

CLASS ACTION COMPLAINT                                                                               6

provider and applicable rate.

25.     These lender-placed or "force-placed" insurance policies are almost always more expensive than standard insurance coverage.  Such policies can cost as much as ten times more than comparable or better, more comprehensive insurance policies that are easily available in the marketplace.  While the force-placed insurance policy is for the benefit of the lender, the cost is passed on to the borrower.  Defendants select Assurant polices because of the financial incentives they negotiated to receive and in turn, self-deal, act in bad faith and breach the implied covenant of good faith and faith dealing.

**B.     DEFENDANTS' FORCE-PLACED INSURANCE PROGRAM.**

26.     Green Tree Servicing owns and services real property mortgages.  Green Tree is one of the many large mortgage owners or servicers in the country that have reaped an improper and substantial windfall from the force-placement of insurance on borrowers' property through the manipulation of the force-placed insurance market.

27.     Upon information and belief, Green Tree force-place insurance policies though Assurant, including ABIC, and outsource insurance tracking, monitoring and processing to Assurant.  Upon information and belief, the tracking and placement services on class members' transactions are conducted by Assurant and/or their affiliates, including ABIC's Insurance Tracking Services Department.

28.     To accomplish the force-placement of insurance and the associated premiums, Green Tree, in bad faith and motive, entered into exclusive arrangements with Assurant whereby Green Tree secure coverage on the consumer's property and then charge the consumer for the premiums it allegedly paid to the insurers' affiliates (in this case, Assurant).

29.     The premiums charged for force-placed insurance are not arrived at on a competitive basis and are significantly higher than those available to Defendants in the open market for comparable or more comprehensive policies.  Servicers, like Green Tree, have no incentive to comparison shop for lower cost insurance with comparable

CLASS ACTION COMPLAINT                                                        7

or better coverage.  Rather, Green Tree is financially motivated to procure policies from the provider that will provide the best financial benefit to the servicer in terms of kickbacks, unearned commissions and/or other compensation (often in the form of low cost administrative services).  Upon information and belief, Assurant paid Green Tree in cash and/or through the provision of other things of value as an incentive to enter into the exclusive contractual relationship with it.  Likewise, despite there being no attempt to shop for a competitively priced policy, the commissions on force-placed polices are significantly higher than those available on lower priced insurance policies of comparable or better coverage. Accordingly, no good faith, arms-length transactions are taking place.  Rather, such attempts are completely by-passed in favor of Defendants' decision to exploit the situation and self-deal without concern for the resulting consequences (and inflated and unnecessary costs) placed on the borrower/class member.   Simply put, Defendants exercise their discretion to intentionally secure the highest priced, lowest coverage policies that allow them to maximize their fees and revenue, while the class members bear the entire financial burden.  This type of situation is generally referred to as reverse competition.

30.    As a result, the amounts charged by Green Tree for force-placed insurance policies are many times more than what borrowers paid for voluntary coverage and many times more what Green Tree would pay if it had obtained insurance coverage on a competitive basis on the open market and without the exclusive arrangements described above.  Moreover, force-placed insurance policies provide less coverage than voluntary insurance policies, as they protect only the lender's interests in the property.

31.    Defendants' force-placed insurance scheme operates in the same or materially the same manner for all class members.

32.    When a borrower's policy lapses, Green Tree will charge the cost of the premium to the borrower. Upon information and belief, Green Tree then retains 35% of the payments as a kickback, disguised as commissions. These kickbacks induce

Green Tree into continuing its exclusive relationship with Assurant and force-placing a more expensive policy than might otherwise have been obtained.

33.    This arrangement provides Green Tree with an incentive to purchase the highest priced force-placed insurance policy possible – the higher the cost of the insurance policy, the higher the commission or kickback. Ultimately, the borrower pays.

34.    The commissions or kickbacks are paid by Assurant or its affiliated insurance companies to Green Tree in order to manipulate the force-placed insurance market and continue their pre-existing, uncompetitive, and exclusive relationship with Green Tree, or other servicers.,

35.    Essentially, Assurant is engaging in a form of commercial bribery in order to induce Green Tree to purchase high-priced force-placed insurance policies, and have Green Tree refrain from seeking competitive bids in the market.

36.    Upon information and belief, the kickbacks paid by Assurant to Green Tree are directly tied to the cost of the force-placed insurance and are usually a significant percentage of the total cost of each premium.

37.    Green Tree never obtains an individual policy for any individual borrower. In fact, Green Tree's entire mortgage portfolio is covered by a pre-arranged master policy with Assurant. Green Tree, therefore, plays no role in purchasing insurance for an individual homeowner. Therefore, Green Tree has done nothing but enter into an exclusive and all-inclusive agreement with Assurant. Upon information and belief, any actual work performed by Green Tree, which is claimed to entitle them to a commission for the placement of a policy is false and non-existent.  In turn, the premiums or cost of insurance coverage represented and charged to class members is deceptive, misleading, false and inflated by the amount given to Green Tree, breaching the contract.

38.    Upon information and belief, Assurant's agreement with Green Tree provides that all properties within Green Tree's portfolio will be monitored by

CLASS ACTION COMPLAINT                                                    9

Assurant and if a homeowner's policy voluntarily lapses or is deemed insufficient; such property will be automatically force-placed with an insurance policy provided by Assurant. The insurance is automatically placed on the property and the premium is ultimately charged to the homeowner even if the lapse is discovered many months or years later. Upon information and belief, Green Tree stopped entering into re-insurance arrangements with Assurant on December 31, 2011.  The force-placed polices issued by Assurant pursuant to the scheme previously described, and further described below, generate improper and unjust windfalls to Assurant and their affiliates at the expense of the borrowers in the Class with whom Assurant have no contractual relationship.  The sole justification for the tactics described above and below is the unjust enrichment of the Defendants, including Assurant and/or their affiliates with whom Plaintiffs have no contractual relationship.

39.     Upon information and belief, when a lapse in a homeowner's insurance is discovered, an automated process is applied to all borrowers like Plaintiff and the Class.  For example, Assurant' software begins a cycle, at regular intervals, of identical form letters, form insurance policies and "binders" purporting to come from Green Tree that are sent to borrowers regarding the lapse in insurance and the force-placement of insurance through Assurant or its affiliates.

40.     Therefore, Green Tree is paying Assurant not only for force-placed insurance premiums, but also for a bundle of services including performing Green Tree's duty of administering and servicing the mortgages (i.e., monitoring and tracking Green Tree's portfolio for insurance lapses and providing notification and customer service to homeowners under the mortgage).  This bundle of administrative services includes Green Tree's cost of monitoring and servicing its portfolio of loans and is not properly chargeable to Plaintiff or the Class under their mortgages.

41.     Under this common course of conduct in force-placing insurance, the "premiums" for insurance that are charged to the Plaintiff and the Class are exorbitant and illegal because they include not only the high (and non-competitive) cost of the

CLASS ACTION COMPLAINT                                                          10

insurance, but also illegal kickbacks to Green Tree, which performs little to no functions or services related to the force-placement of the individual policies. Further, the cost of the bundle of administrative services that Assurant are providing to Green Tree is subsumed within the high premium cost.

42.     Therefore, in addition to performing no work in the actual placement of the force-placed policy, Green Tree's actions, in concert with Assurant, act to penalize borrowers, including Plaintiff and the Class, by sticking them with the highest priced force-placed insurance policy possible. Green Tree abuses its discretion to force-place insurance arbitrarily, in bad faith and with bad motive and intent in order to secure a substantial kickback from Assurant and self-deal.

43.     Generally, the high-cost premiums are added to the principal balance of the borrower's mortgage loan or deducted from his or her tax and insurance escrow account.

44.     The actions and practices described herein are undertaken in bad faith and motive. Defendants misrepresent to individual Green Tree borrowers that they will procure a policy to cover the risk arising from their properties when, in fact, a "master" policy has already been put in place. Defendants then charge borrowers inflated premiums for the master policy, which are calculated to include kickbacks and costs not properly charged to the borrower without regard for competition on the open market. Defendants' only goal is to maximize their profits by charging high prices and collecting unjustified kickbacks.

45.     Defendants' manipulation of the force-placed insurance process has maximized the profits to themselves to the great financial detriment of Plaintiff and the Class, who are never treated fairly or even consulted during the process. Defendants were not, and are not, authorized by any federal, state, or local governing body, contract, or agreement to manipulate their force-placed insurance purchases in bad faith, as alleged above.

46.     Force-placed insurance policies are extremely lucrative for Defendants.

For example, in 2011, Green Tree's parent company, WIMC, obtained nearly $41.7 million of its $402 million in total revenues from insurance revenue, which primarily consisted of commissions from over 108,000 force-placed policies.

47.    In 2011, WIMC's total pro forma combined insurance revenues, including Green Tree Servicing, exceeded $68 million.[1]  Lender-placed insurance accounts for approximately 39% of WIMC/Green Tree Servicing's combined insurance revenue and approximately 10% of WIMC's pro-forma adjusted EBITA.[2] WIMC/Green Tree Servicing' combined 2011 EBITA was $211 million and projects a 2012 EBITA of $225-240 million.  As such, force-placed insurance generated profits for Defendant Green Tree Servicing of approximately $21 million in 2011 and $22.5-24 million in 2012.

48.    Green Tree Insurance is licensed to sell insurance in 47 states, including California, and "acts as an agent for this purpose by placing the insurance coverage with a third-party carrier and for which the agency earns a commission."[3]

49.    Defendant Green Tree Insurance represents that its "revenue consists of commission income and fees earned on voluntary and lender-placed insurance policies and other products sold to customers, net of estimated future policy cancellations, as well as premium revenue from captive reinsurers."[4] It also states that it earns commission income "based on a percentage of the price of the insurance policy sold, which varies based on the type of product."[5]

50.    In 2009, WIMC wrote premiums for 6,708 force-placed policies, which decreased to 6,188 in 2010, and then increased to 108,766 policies in 2011 after the acquisition of Green Tree Servicing and Green Tree Insurance.

---

[1]  WIMC, Form 8-K, Exh. 99.1 ("Credit Suisse 13th Annual Financial Services Forum"), March February 8, 2012, p. 10.
[2]  WIMC, Form 8-K, Exh. 99.1 ("Credit Suisse 13th Annual Financial Services Forum"), March February 8, 2012, p. 10.
[3]  WIMC, 2011 Form 10-K, March 9, 2012, p. 11.
[4]  WIMC, 2011 Form 10-K, March 9, 2012, p. 40.
[5]  WIMC, 2011 Form 10-K, March 9, 2012, p. 40.

51.    In 2009, WIMC wrote premiums for $6.858 million in force-placed policies, which decreased to $6.036 million in 2010, and then increased to $45.063 million in 2011 after the acquisition of Green Tree Servicing and Green Tree Insurance.

52.    In 2009, WIMC generated total third-party (commission) revenue of $10.041 million, which decreased to $9.163 million in 2010, and then increased to $41.651 million in 2011 after the inclusion of $22.9 million in commissions earned by Green Tree Servicing and Green Tree Insurance.  In 2011, Green Tree Insurance alone wrote 193,605 policies with total net premiums of $74.484 million.  Of that total, 102,578 policies with total net premiums of $39.027 million were force-placed policies (leaving 91,027 voluntary policies with total net premiums of $35.457 million).

53.    Upon information and belief, voluntary policies sold by Green Tree Insurance typically cost much less than force-placed policies, paying a much lower commission, due to the presence of competition in the voluntary policy marketplace.

54.    Upon information and belief, the bulk of the commissions earned by Defendant Green Tree Insurance are from force-placed policies such as Plaintiff's Policy.

55.    The force-placed insurance business is not new, but Defendants' practice of capitalizing on their ability to generate inflated commissions and bolster their bottom line is new and recently has been exposed.  As The New York Times has reported:

> "Force-placed insurance appears to be the dirty little secret of the mortgage industry," Mr. Lawsky [the superintendent of the New York State Department of Financial Services] said in an interview last week. "It is a silent killer harming both consumer and investors while enriching the banks and their affiliates."

* * *

CLASS ACTION COMPLAINT                                                          13

Force-placed insurance has exploded during the foreclosure crisis. Once a backwater that generated $1 billion a year, it is now a $6 billion-a-year business. Much of its growth has come on the backs of homeowners.

\* \* \*

There is a lot to love about force-placed insurance — if you sell it. The policies typically cost at least three times as much as ordinary property insurance. Some borrowers have been charged much more — up to 10 times the prevailing rate — according to people knowledgeable about these practices who spoke on condition of anonymity to maintain business relationships.

\* \* \*

All in all, force-placed insurance represents a major profit center for mortgage servicers and the companies that write the policies. In many cases, you will not be surprised to learn, the servicers and the insurers are affiliated. This sets up the potential for conflicts of interest among loan servicers that are often supposed to represent investors owning mortgage loans bundled into securities.

\* \* \*

Many banks have set up affiliates that provide this insurance or take on some of the risks that other companies have insured, known as reinsurance. These cozy relationships are a focus of investigators.

\* \* \*

Insurers that are not affiliated with lenders have paid fees from 15 to 20 percent of the policy to the banks that place the insurance, according to former industry executives. This indicates how lucrative the business is.[6]

---

[6]   Gretchen Morgenson, *Hazard Insurance With Its Own Perils*, The New York Times, January 22, 2012, p. BU1, *available online at* <http://www.nytimes.com/2012/01/22/business/hazard-insurance-with-its-own-perils-fair-game.html?pagewanted=print> (last accessed August 9, 2012).

CLASS ACTION COMPLAINT                                                                14

56.     Upon information and belief, Assurant pays kickbacks in the form of inflated commissions and/or similar unlawful sums to Green Tree in connection with force-placed insurance. The kickbacks paid by Assurant to lenders and/or their affiliates on force-placed insurance coverage are the subject of numerous reported cases and government investigations.

57.     Furthermore, these fraudulent practices have recently come under examination by all fifty State Attorney Generals as part of a nationwide investigation requiring that force-placed insurance be reasonable.   And, as the State Attorney Generals have recognized, this practice has greatly contributed to the foreclosure crisis.

58.     The New York investigation of the industry has "uncovered evidence of potentially problematic and abusive practices in the industry occurring at the expense of homeowners[.]"[7] "Early findings of the investigation suggest that 15 percent or more of premiums collected by force-placed insurers flow to the banks through insurance agents affiliated with the banks."[8]

59.     On May 21, 2012, the New York Department of Financial Services held a Public Hearing on Force-Placed Insurance.   At that hearing, expert Economist and former insurance regulator, Birny Birnbaum testified regarding forced-placed practices.[9]   Birnbaum's report concluded, *inter alia*, (1) "The Lender-Placed Home Insurance (LPI) market is characterized by reverse competition, in which the cost of insurance placed on the borrower's loan is pushed up by LPI insurers in competition for servicers' business"; (2) "The LPI market is not beneficially competitive to consumers, as evidenced by numerous measures, including market concentration, high

---

[7] <http://www.dfs.ny.gov/about/press/pr1204261.htm> (last accessed October 20, 2014).
[8] <www.dfs.ny.gov/about/press/pr1204051.htm> (last accessed October 20, 2014).
[9] See Birnbaum Report, available at http://www.dfs.ny.gov/about/hearings/ fp_052012/Birny_Birnbaum_Center_for_Economic_Justice_testimony.pdf          (last accessed October 20, 2014).

prices, low loss ratios, insurer profitability and kickbacks to servicers" (3) "Insurer excuses for maintaining excessive rates are unsupported by any evidence, actuarial principles or logic and are without merit." Birnbaum's statements accurately describe Defendants' nationwide (and California) practices with regard to force placed insurance, in material respects.

60.     Plaintiff does not dispute that Green Tree is entitled under Plaintiff's and each Class Member's mortgage to purchase force-placed insurance when a lapse in coverage actually occurs; however, Plaintiff does maintain that said purchase must be made in good faith, without bad motive and in compliance with the mortgages' terms.

61.     Plaintiff challenges the uncompetitive and unfair method used to select and place the policies which is a result of illegal kickbacks and unearned commissions..

62.     Defendants' manipulation of the force-placed insurance process has maximized the profits to themselves to the great detriment of the Plaintiff and the Class. Defendants were not and are not, authorized by any federal, state, or local governing body, contract, or agreement to manipulate their force-placed insurance purchases in bad faith, and unconscionable practices. Defendants' exclusive arrangement is in place solely to maximize their profits through the manipulation of the force-placed market by collecting unjustified kickbacks or other compensation. This conduct is prohibited by law.

## C.     PLAINTIFF IS A TYPICAL VICTIM OF DEFENDANTS' COMMON COURSE OF MISCONDUCT.

63.     In or around 2005, Plaintiff purchased a single family home located at 192 East Branch, Nipomo, California 93444 (the "Property"). The property purchased was for Plaintiff's personal use and enjoyment.

64.     To finance the purchase of the Property, Plaintiff executed a written thirty-year, adjustable rate mortgage with GMAC Mortgage Corporation DBA ditech.com, a direct lender, on July 20, 2005 in the amount of $200,000 (the

"Mortgage Agreement").

65.   Plaintiff's mortgage was memorialized on a Fannie Mae/Freddie Mac Uniform Instrument (Form 3005 dated 01/01).

66.   Typical of most mortgages, Plaintiff's mortgage included a provision that required her to secure and pay for adequate property insurance that protected the Property against loss by fire and other hazards.  It also provides that the lender has the right to force-place insurance in the event Plaintiff fails to secure such a voluntary policy or if Plaintiff's voluntary policy lapses.

67.   Effective on or about February 1, 2013, GMAC Mortgage, LLC assigned, sold, or transferred all interest in Plaintiff's mortgage to Green Tree Servicing.

68.   Plaintiff was invoiced by Green Tree Servicing (dated May 7, 2013) stating that Plaintiff owed $281.24 in forced-place insurance premiums.

69.   Green Tree deducted $281.24 from Plaintiff's payment on June 29, 2013, and applied it to the force-placed insurance, causing her injury, financial loss and damage.

70.   The charge imposed and paid by Plaintiff included amounts that were not true costs of insurance as permitted by the contract, specifically the kickback.

71.   There was no valid basis or authorization for the force-placement of this policy.  The policy was not placed, charged or paid by Plaintiff in any voluntary manner.  Plaintiff never voluntarily paid any premium for any force-placed policy.

72.   Green Tree continued to automatically deduct the Force-Placed Policy's monthly premium of $281.24 from Plaintiff's monthly payment in July, August, September, October, November and December of 2013.

73.   In total, Green Tree debited at least $1,406.20 for the Force-Placed Policy's monthly premiums from Plaintiff's monthly payments in 2013 causing her financial loss and damage.

74.   Plaintiff has demanded a refund of the premiums that were improperly charged and collected, however, Green Tree denied her request.

CLASS ACTION COMPLAINT                                                                 17

75.     Upon information and belief, Defendant Green Tree received a substantial kickback or commission from Assurant as a percentage of the premium for the Force-Placed Policy.

76.     Based on the forgoing, Plaintiff was forced to retain counsel and file this class action lawsuit seeking monetary, declaratory and injunctive relief for the defined Class.     As Plaintiff still owns her home in California, she remains subject to Defendants' unlawful practices, described and challenged herein, in the future. Further Defendants' unlawful conduct is capable of repetition evading review if this matter does not go forward.

77.     As of this filing, Plaintiff has not received any "refund" or payment from any Defendant by check, electronic transfer, bank wire, or any other means.

## V.     CLASS ACTION ALLEGATIONS

78.     This action is brought as a class action and may properly be so maintained pursuant to Fed. R. Civ. P. 23 and other applicable rules of civil procedure.  This action seeks recovery of actual damages, restitution, injunctive and equitable relief arising from Defendants' unfair business practices.

79.     **Class Definition:**  The Class sought to be represented in this action is defined as follows:

> All borrowers subject to a Fannie Mae or Freddie Mac uniform instrument serviced by Green Tree Servicing, LLC on property located in California who were charged or paid premiums for a force-placed insurance policy during the Class Period unless (1) the lender has obtained a foreclosure judgment against the borrower; (2) the borrower has entered into a short-sale agreement with the lender; (3) the borrower has granted a deed in lieu of foreclosure to the lender; (4) the borrower has entered into a loan modification agreement with the lender; (5) the borrower has filed a claim for damages which has been paid in full or part by the force-placed insurer; or, (6) the cost of the force-placed insurance was cancelled out in full (the "Class").

The Class Period dates back four years (or the length of the longest applicable statute of limitations for any claim asserted) from the date this action was originally

filed.   Excluded from the Class are: (a) any officers, directors or employees of the Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any employee of the Court; and (d) any juror selected to hear this case.

80.   Plaintiff reserves the right to modify or amend the above-referenced definitions before the Court determines whether certification is appropriate.

81.   Defendants subjected Plaintiff and the respective Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above is the Defendants' standard and undisputed business practice.

82.   **Numerosity of the Class.**   Members of the class and subclass are so numerous that their individual joinder herein is impracticable.  The Defendants sell and service thousands of mortgage loans and insurance policies in California. The individual class members are ascertainable as the names and addresses of all class members can be identified in the business records maintained by Defendants.  The precise number of members of the class and subclass certainly numbers in the thousands and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint and impractical for each to bring suit individually.  Plaintiff does not anticipate any difficulties in the management of the action as a class action.

83.   **Ascertainable Class.** The proposed Class is ascertainable.  The litigation of the questions of fact and law involved in this action will resolve the rights of all members of the Class and hence, will have binding effect on all class members. These Class members can be readily identified from business records, billing systems, and telephone records of the Defendants and other means readily available to the Defendants, and thus by the Plaintiff, through minimally intrusive discovery.  The class is numerous.  Joinder of all class members is impracticable due to the relatively small monetary recovery for each class member in comparison to the costs associated

with separate litigation and likelihood that due to the nature of the lender-placed insurance that class members faced they may have when initially contacted Defendants, class members are likely in poor financial situations.

84.   **Commonality.**   There are questions of law and fact that are common to the Plaintiff's and Class members' claims.   These common questions of law and fact exist as to all members of the class and predominate over the questions affecting only individual members of the class.   Among such common questions of law and fact are the following:

 a. Whether Green Tree breached its mortgage agreements with Plaintiff and the Class by charging them for force-placed insurance that included illegal kickbacks (including unwarranted commissions and reinsurance payments) and by charging Plaintiff and the Class for servicing the loans;

 b. Whether Defendants owe their customers a duty of good faith and fair dealing, and if so, whether Defendants breached this duty by adding a kickback to the cost of insurance;

 c. Whether Green Tree owes its customers a duty of good faith and fair dealing, and if so, whether it breached this duty by arranging for kickbacks or commissions for itself and/or its affiliates in connection with lender-placed insurance and failing to disclose the same to its customers;

 d. Whether the Defendants manipulated the forced-placed mortgage purchases in order to maximize the profits to themselves to the great detriment to Plaintiff and the Class;

 e. Whether other Green Tree affiliates provide any work or services in order to receive a "commission or other compensation";

 f. Whether Defendants were unjustly enriched by their conduct;

 g. Whether Defendants' form letters are false, deceptive, and/or misleading;

 h. The appropriateness and proper form of any declaratory or injunctive

relief; and

i.   The appropriateness and proper measure of monetary and other damages sustained by the Class.

85.   **Typicality.** Plaintiff is a member of the Class and her claims are typical of the claims of members of the Class.  Typical of other Class members, Plaintiff was charged and paid an inflated non-competitive premium for a force-placed insurance policy during the Class Period. Plaintiff has a uniform Fannie Mae/Freddie Mac uniform instrument.   Plaintiff and the Class members each sustained, and will continue to sustain, damages arising from Defendants' common and uniform course of wrongful conduct, as alleged more fully herein.  Plaintiff's claims are founded on the same legal theories as those of the Class.

86.   **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interest of the members of the Class. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel competent and experienced in the prosecution of complex class actions involving consumer fraud, including mortgage fraud.  Plaintiff has no interests contrary to the class members, and will fairly and adequately protect the interests of the Class.

87.   To prosecute this case, Plaintiff has retained the law firms of Zimmerman Reed, PLLP and Ridout Lyon + Ottoson, LLP. These firms have extensive experience in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

88.   The questions of law or fact common to Plaintiff's and each Class member's claims predominate over any questions of law or fact affecting only individual members of the class.   All claims by Plaintiff and the unnamed class members are based on the force-placed insurance policies that Defendants unlawfully secured through a common and uniform course of misconduct.

89.   Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages

1    determinations.

2    90.    **Superiority of Class Adjudication.** The certification of a class in this
action is superior to the litigation of a multitude of cases by members of the putative
class. Class adjudication will conserve judicial resources and will avoid the possibility
of inconsistent rulings. Moreover, there are class members who are unlikely to join or
bring an action due to, among other reasons, their reluctance to sue Defendants and/or
their inability to afford a separate action. Equity dictates that all persons who stand to
benefit from the relief sought herein should be subject to the lawsuit and hence subject
to an order spreading the costs of the litigation among the Class embers in relationship
to the benefits received. The damages, restitution and other potential recovery for each
individual member of the Class are modest, relative to the substantial burden and
expense of individual prosecution of these claims. Given the amount of the individual
class members' claims, few, if any, Class embers could afford to seek legal redress
individually for the wrongs complained of herein. Individualized litigation presents a
potential for inconsistent or contradictory judgments. Individualized litigation
increases the delay and expense to all parties and the court system presented by the
complex legal and factual issues of the case. By contrast, the class action device
presents far fewer management difficulties, and provides the benefits of single
adjudication, economy of scale, and comprehensive supervision by a single court.

20    91.    In the alternative, the above-referenced class may be certified because:

21    a.    The prosecution of separate actions by the individual members of the
Class would create a risk of inconsistent or varying adjudication with
respect to individual class members' claims which would establish
incompatible standards of conduct for Defendants;

25    b.    The prosecution of separate actions by individual members of the Class
would create a risk of adjudications which would as a practical matter be
dispositive of the interests of other members of the class who are not
parties to the adjudications, or which would substantially impair or

1    impede the ability of other class members to protect their interests; and,

2    c.    Defendants have acted or refused to act on grounds generally applicable

3          to the class, thereby making appropriate final and injunctive relief with

4          respect to the Class.

5                        **VI.    CAUSES OF ACTION**

6                        **FIRST CAUSE OF ACTION**

7                              **Breach of Contract**

8           **(Against Green Tree Servicing On Behalf of the Class)**

9    92.    Plaintiff alleges and incorporates by reference all the preceding

10   paragraphs above as if fully set forth herein.

11   93.    Plaintiff and the Class have standard form mortgage contracts with Green

12   Tree Servicing that are similar in all material respects with respect to force-placed

13   insurance.  At all times, Green Tree was contractually obligated to service the loans of

14   Plaintiff and the Class pursuant to the terms of the mortgage contracts.

15   94.    To the extent the mortgage contracts of Plaintiff and Class members

16   permitted Green Tree Servicing to unilaterally force-place insurance, Green Tree

17   Servicing was contractually permitted to do so only to the extent necessary to protect

18   the mortgagee's interest in the secured property.

19   95.    Under these mortgage contracts, Green Tree Servicing was permitted to

20   obtain lender-placed insurance in the event of an actual lapse in coverage, however,

21   Green Tree Servicing was only permitted to do so in a manner and amount that is

22   reasonable and appropriate to protect an insurable interest in the property.  Although

23   these mortgage contracts allow Green Tree Servicing to charge the homeowners for

24   true "costs of the insurance coverage so obtained" and "amounts disbursed," nothing

25   in the contract authorizes Green Tree Servicing to charge Plaintiff for amounts

26   retained, rebated or kicked-back to Green Tree or for illusory placement services.

27   Amounts rebated or retained by Green Tree Servicing, in transactions such as

28   Plaintiff's, are not a "cost of the insurance coverage" and not a true "disbursement"

CLASS ACTION COMPLAINT                                                    23

authorized under the Paragraphs 5, 9 or any other provision of the form mortgage contract.

96.     Green Tree Servicing breached their mortgage contracts with Plaintiff and the Class in at least the following respects:

a.     Charging Plaintiff and the Class for "costs of insurance" that exceeded the true costs of insurance and amounts truly "disbursed" to the insurers;

b.     Exceeding their contractual authority to require borrowers to pay for the cost or expenses the lender incurred for force-placed insurance by requiring borrowers, such as Plaintiff and the Class, to pay the full gross amount of the premium for force-placed insurance, irrespective of the fact that the full gross premium amount was not actually an expense or cost to Green Tree Servicing because a portion of it was paid back to Green Tree and/or their affiliates in the form of a pre-negotiated commission.

c.     Collecting a percentage or allowing its affiliates to collect a percentage of whatever premiums are charged to Plaintiff and the Class and not passing that percentage on to the borrower, thereby creating the incentive to seek and force-place upon the borrower (i.e., Plaintiff and the Class) the highest-priced premiums possible;

d.     Charging Plaintiff and the Class for undisclosed kickbacks and commissions in the manner described; and

e.     Charging Plaintiff and the class for compensation placing the insurance when such compensation was not authorized by the contract and no actual services were performed by Green Tree to earn such compensation.

97.     As a direct, proximate, and legal result of the aforementioned breaches of contract, Plaintiff and the members of the Class have suffered damage, financial loss and injury.

98.     The conduct complained of is ongoing and unless enjoined will continue and continue to put Class members, including Plaintiff, at risk of further damage.

99.     The conduct set forth above has and continues to harm Plaintiff and the Class.  Unless enjoined, these practices will continue to put Class members at risk of further damage and loss.  A declaration of the parties' rights under the contracts is appropriate and sought.

**100.**   By reason of the foregoing, Plaintiff and each member of the Class are entitled to recover from Defendant damages, restitution, injunctive relief, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief deemed just and equitable in the circumstances.

**SECOND CAUSE OF ACTION**

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

**(Against Green Tree Servicing On Behalf of the Class)**

101.    Plaintiff alleges and incorporates by reference all the preceding paragraphs above as if fully set forth herein.

102.    The implied covenant of good faith and fair dealing is implied in all contracts, including any contracts between Plaintiff and Green Tree.  Good faith and fair dealing is an element of every contract and imposes upon each party a duty of good faith and fair dealing in its performance.

103.    The implied covenant of good faith and fair dealing requires a party vested with discretion under a contract to exercise that discretion reasonably and with proper motive, not arbitrarily, capriciously or in a manner inconsistent with the reasonable expectations of the parties.

104.    Where an agreement permits one party to unilaterally determine the extent of the other's required performance, an obligation of good faith in making such determination is implied.

105.    Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such

CLASS ACTION COMPLAINT                                                        25

1  discretion be exercised honestly and in good faith.

2  106.   In general, the implied covenant of good faith and fair dealing seeks to

3  protect the contracting parties' reasonable expectations and serves to supply limits on

4  the parties' conduct when their contract defers decision on a particular term, omits

5  terms or provides ambiguous terms.

6  107.   Discretion in performance arises in several ways.  For instance, as here,

7  the parties may find it to their mutual advantage at formation to defer decision on a

8  particular term and to confer decision-making authority as to that term on one of them.

9  In such situations, the dependent party must rely on the good faith of the party in

10  control.  In such situations courts raise explicitly the implied covenant of good faith

11  and fair dealing, and interpret a contract in light of good faith performance.

12  108.  Plaintiff and the Class members' mortgage contracts contained a

13  provision that allowed the mortgage servicer to force-place an insurance policy on the

14  borrower if their homeowner's insurance lapsed.  Green Tree was party to a contract

15  with Plaintiff and each class member that made the manner of its performance a

16  matter of its own discretion.   Plaintiff and other members of the Class, in turn, were

17  dependent on Green Tree and relied on Green Tree as the party in control to act

18  reasonably, in good faith and with proper motive.

19  109.  In exercising that discretion in Plaintiff's and Class members'

20  transactions, Green Tree acted unreasonable, in bad faith and with bad motive and

21  intentions.  Green Tree's conduct went beyond mere negligence, unreasonableness or

22  the making of poor choices and instead, amounted to acting intentionally with bad

23  motive and bad intention in order to self-deal, maximize profits pursuant to Green

24  Tree's side deal for secret kickbacks with Assurant, and to penalize Plaintiff and the

25  Class who bore the entire financial burden and cost of the transaction.

26  110.  In exercising its discretion, Green Tree acted with bad motive and

27  intention in order to self-deal and penalize Plaintiff and other class members by

28  purchasing insurance with less coverage and considerably higher premiums than

CLASS ACTION COMPLAINT                                                                26

alternative policies available in the marketplace and able to be purchased with no additional burden.    Rather than acting out of concern for its security, Green Tree seized upon the perceived lapse in coverage as a money-making opportunity for it and entities it had private kickback deals with (Assurant) and as an opportunity to penalize Plaintiff and the Class financially.    Green Tree acted not to protect its security in good faith, but rather to increase its profits at the expense of Plaintiff and the Class by funneling business to entities (Assurant) that it had conspired with and agreed to pay it the largest kickbacks even though Green Tree conducted no work and performed no services to earn any such "commissions" or kickbacks received.

111.    Further, the premiums on force-placed policies charged Plaintiff and the Class did not reflect the true costs of insurance to Green Tree because a sizeable portion of the premiums charged was secretly retained by and/or refunded to Green Tree as a "commissions" or kickback.   Those amounts in no manner reflected the fair value of any services provided.   In fact, Green Tree performed no services for the commissions and kickbacks received.   These were not costs properly charged to Plaintiff and the Class.

112.   But for the desire to maximize their commission / kickback revenue and the desire to penalize Plaintiffs and the Class, no rational person would have chosen to purchase the type of insurance policies Green Tree did for Plaintiff and the Class.

113.   Mortgage servicers or lenders, like Defendants, are permitted to unilaterally choose the company to purchase force-placed insurance from but have an obligation to exercise their discretion in good faith and not choose the company capriciously and in bad faith (solely for their or their affiliates own financial gain) instead of seeking to continue or reestablish the prior insurance policies or seeking competitive bids on the open market in good faith.

114.   In all of their actions described herein, Green Tree acted on its own behalf and as the duly authorized agent of the owner or assignee of the mortgage agreement of Plaintiff and the members of the Class. Green Tree was contractually

CLASS ACTION COMPLAINT                                                                                       27

obligated to service the loans of Plaintiff and the members of the Class pursuant to the terms of the mortgage agreements.

115.   The mortgage contracts and insurance policies of Plaintiff and the Class contained an implied covenant of good faith and fair dealing whereby Defendants agreed to perform the obligations under the policies in good faith, to deal fairly with Plaintiff and the Class, and not to charge unnecessarily inflated fees for the lender-placed insurance for the purposes of maximizing their own profits at the Class's expense. Any discretionary authority granted to Green Tree under the terms of the Plaintiff's and members of the Classes' mortgage contracts was subject to Green Tree's implied duty of good faith and fair dealing.   Accordingly, to the extent that the mortgage contracts of Plaintiffs and the members of the Class permitted Green Tree to unilaterally "force-place" insurance, Green Tree was obligated not to exercise their discretion to do so in bad faith for their own financial gain for the purposes of maximizing profits at borrowers' expense.

116.   Green Tree breached their duty of good faith and fair dealing in at least the following respects:

a.   Failing to make any effort whatsoever to maintain borrowers' existing insurance policies and, instead – for the sole purpose of maximizing their own profits – forcing borrowers to pay for insurance policies from providers of Green Tree's choice, such as Assurant.   Their policies needlessly came with substantially greater premiums and less coverage than borrowers' existing policies which provided an improper financial benefit to Green Tree and/or its affiliates;

b.   Using their discretion to choose an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting high-priced force-placed insurance policies to maximize their own profits;

c.   Failing to seek competitive bids on the open market and instead

contracting to create "back room" deals whereby the insurance policies are continually purchased through the same companies without seeking a competitive price;

d. Assessing excessive, inflated and unnecessary insurance policy premiums against Plaintiff and the Class and misrepresenting the reason for the cost of the policies;

e. Collecting a percentage or allowing its affiliates to collect a percentage of whatever premiums are charged to Plaintiff and the Class and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest priced premiums possible;

f. Charging Plaintiff and the Class for commissions and claiming it to be a "cost" when the insurance is prearranged and no commission is due;

g. Charging Plaintiff and the Class for having the vendor perform their obligation of administering its mortgage portfolio which is not chargeable to Plaintiff or the Class.

117. As direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiff and the Class have suffered damages, financial loss and injury.

118. The unlawful and unfair business practices set forth above have and continue to harm Plaintiffs and the Class.  Unless enjoined these practices will continue and continue to put Class members at risk of further damage and loss.  As a result, Plaintiff and the Class are entitled to injunctive, declaratory and other equitable relief.

119. By reason of the foregoing, Plaintiff and each member of the class are entitled to recover from Defendant damages, restitution, injunctive relief, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief deemed just and equitable in the circumstances.

CLASS ACTION COMPLAINT                                                     29

### THIRD CAUSE OF ACTION

### Violation Of The Unfair Competition Law

### Cal. Bus. & Prof. Code §17200, *Et Seq.*

### (On Behalf of the Class Against All Defendants)

120.   Plaintiff alleges and incorporates by reference all the preceding paragraphs above as if fully set forth herein.

121.   Plaintiff brings this claim on her own behalf and on behalf of the Class members.

122.   California's Unfair Competition Law (the "UCL") defines unfair competition to include and "unlawful, unfair, or fraudulent" business act or practice. Cal. Bus. & Prof. Code § 17200, *et seq.*

123.   Green Tree engaged in unfair business practices under the UCL because its actions, as described herein, are immoral, unethical, oppressive and substantially harmful to Plaintiff and the Class; and the justification for Green Tree's practices and conduct is outweighed by the gravity of the injury to Plaintiff and the Class.

124.   Plaintiff and the Class were injured in fact and lost money or property as a result of these unfair business practices.   In particular and without limitation, Plaintiff and the Class paid and incurred unreasonable and unnecessarily excessive commissions and/or kickbacks in connection with Defendants' force-placed insurance policies.

**125.**   By reason of the foregoing, Plaintiff and each member of the class are entitled to recover from Defendant restitution, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief deemed just and equitable in the circumstances.

## FOURTH CAUSE OF ACTION

### Money Had and Received (Restitution)

### (Against Green Tree Insurance On Behalf of the Class)

126.  Plaintiff alleges and incorporates by reference the preceding paragraphs above as if fully set forth herein, except those inconsistent with this count.

127.  Green Tree received from Plaintiff and Class members a benefit in the form of overcharges related to lender-placed insurance policies – specifically in the form of undisclosed and unwarranted kickbacks and commissions.

128.  Defendants entered into an agreement whereby the vendors – Assurant – would provide lender-placed insurance policies to the Green Tree through its preferred insurance carriers for the portfolio of loans it monitored which were paid for by Plaintiff and the Class at prices that were far higher than the market rates for policies that provide even more coverage.

129.  Assurant paid and collected significant monies in kickbacks, commissions, and reinsurance tied directly to the cost of the lender-placed insurance premium (as a percentage).  These commissions or kickbacks were paid to the Green Tree and/or their affiliates in order to be able to exclusively provide lender-placed insurance policies.

130.  The kickbacks and commissions were subsumed into the price of the insurance premium and ultimately paid by the borrower.  Therefore, all Defendants had the incentive to charge and collect inflated prices for the force-placed policies.

131.  As a result, Plaintiff and the Class have conferred a benefit on Green Tree and Green Tree had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on them – kickbacks and commissions.

132.  Green Tree will be unjustly enriched if it is allowed to retain the benefit, and each Class member is entitled to an amount equal to the amount each class member enriched Green Tree and for which Green Tree has been unjustly enriched.

133.  Nothing herein seeks to stop Assurant or other insurers from selling

CLASS ACTION COMPLAINT                                                    31

lender-placed insurance policies, or end the Defendants' practice of placing lender-placed insurance on properties. Plaintiff only seeks that the Defendants provide the same in good faith and not at inflated and noncompetitive prices.

134.   The unlawful and unfair business practices set forth above have and continue to harm Plaintiff and the Class.  Unless enjoined these practices will continue and continue to put Class members at risk of further damage and loss.  Plaintiff and the Class are entitled to equitable relief.

135.   By reason of the foregoing, Plaintiff and each member of the Class are entitled to recover from Defendant restitution, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief deemed just and equitable in the circumstances.

## VII.   RELIEF REQUESTED

WHEREFORE, Plaintiff Carlene Longest, as an individual and on behalf of all those similarly situated, prays for relief and judgment against Defendants, jointly and severally, as follows:

A.   For an order certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her undersigned counsel to represent the Class;

B.   For preliminary and permanent injunctive relief prohibiting Defendants from engaging in the wrongful practices alleged in this Complaint;

C.   For damages sustained by Plaintiff and the Class (as to Counts 1 and 2 only);

D.   For restitution;

E.   For disgorgements of profits;

F.   For payment of reasonable attorneys' fees and costs pursuant to the "common fund" doctrine, statutory fee-shifting provisions, equitable principles of contribution, and/or any other applicable method of awarding attorneys' fees and costs in class actions;

CLASS ACTION COMPLAINT                                                        32

G.    For payment of costs of suit incurred herein;

H.    For payment of prejudgment interest as provided by law; and,

I.    For any such further relief as this Court deems equitable, just and proper.

## VIII. JURY TRIAL DEMANDED

Plaintiff seeks a trial by jury for all appropriate issues on each and every cause of action in this Complaint.

Respectfully submitted,

RIDOUT LYON + OTTOSON, LLP

Dated: October 21, 2014      By:    /s/ Caleb Marker
                                     Christopher P. Ridout
                                     Caleb Marker
                                     Hannah P. Belknap
                                     555 E. Ocean Blvd., Suite 500
                                     Long Beach, CA 90802
                                     (562) 216-7380 Telephone
                                     (562) 216-7385 Facsimile

                                     ZIMMERMAN REED, PLLP
                                     Bradley C. Buhrow (CA Bar No. 283791)
                                     E-mail: Brad.Buhrow@zimmreed.com
                                     14646 N. Kierland Blvd., Suite 145
                                     Scottsdale, AZ 85254
                                     (480) 348-6400 Telephone
                                     (480) 348-6415 Facsimile

                                     *Attorneys for Plaintiff*