RIDOUT LYON + OTTOSON, LLP
CHRISTOPHER P. RIDOUT, ESQ (State Bar No. 143931)
 E-mail: c.ridout@rlollp.com
CALEB MARKER, ESQ. (State Bar No. 269721)
 E-mail: c.marker@rlollp.com
HANNAH P. BELKNAP, ESQ. (State Bar No. 294155)
 E-mail: h.belknap@rlollp.com
555 E. Ocean Blvd., Suite 500
Long Beach, CA 90802
(562) 216-7380 Telephone
(562) 216-7385 Facsimile

ZIMMERMAN REED, PLLP
HART L. ROBINOVITCH, ESQ. (Admitted *Pro Hac Vice*)
 E-mail: Hart.Robinovitch@zimmreed.com
BRADLEY C. BUHROW, ESQ. (CA Bar No. 283791)
 E-mail: Brad.Buhrow@zimmreed.com
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
(480) 348-6400 Telephone
(480) 348-6415 Facsimile

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLENE LONGEST, JUNXIU "ALEX" CAI and LIFEN "REGINA" CAI, individually and on behalf of all others similarly situated<br><br>          Plaintiffs,<br><br>      v.<br><br>GREEN TREE SERVICING, LLC, a Delaware limited liability company, GREEN TREE INSURANCE AGENCY, INC. a Minnesota corporation.<br><br>         Defendants. | Case No.:  2:14-cv-08150-CAS (RZx)<br><br>*Assigned for all purposes to:*<br>*Hon. Christina A. Snyder*<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF REVISED MOTION FOR CLASS CERTIFICATION**<br><br>Date:      June 15, 2015<br>Time:      10:00 a.m.<br>Courtroom:  5 |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

I.  INTRODUCTION ........................................................................................ 1

II.  ARGUMENT.................................................................................................. 2

   A.  Plaintiffs Have Narrowly Tailored The Class Definition To Avoid The Issues Presented In The National Class Cases Which Defendants Rely. .......................................................................................... 2

   B.  Defendants Ignore The Fact That Federal And State Agencies Have Had No Difficulty Evaluating The Challenged Practices In Single Proceedings.................................................................................. 3

   C.  Common Issues of Law and Fact Predominate On All Claims. .............. 3

      1.  Common Issues Of Law And Fact Predominate With Regard To The Breach Of Contract Claim. .................................. 5

         a.  Claims Involving Breach Of Standard Form Contracts Are Properly Certified. ........................................... 5

         b.  Determining Whether The "Cost of Insurance" Included Kickbacks Is A Common Issue. ............................ 7

         c.  Determining Whether Borrowers Were Charged For Amounts Beyond Those "Disbursed by Lender" Is Established With Common Evidence. ................................ 7

         d.  Common Evidence Establishes That The Amounts Charged Was Not Limited To That "Reasonable or Appropriate to Protect Lender's Interest in The Property" and Instead Was An Attempt To Self-Deal and Create A New Profit Center........................................... 8

         e.  There Is No Need To Consider Any Parol Evidence On Contract Formation Or Extrinsic Evidence As To The Meaning Of Terms In A Standard Form Mortgage Contract.............................................................. 9

         f.  Proof Of Performance In The Manner Described By Defendants Is Not An Element Of The Contract Claim.....11

         g.  Defendants' Disclosure Arguments Remain Misplaced ....12

      2.  Common Issues Predominate With Regard To The Breach Of Implied Covenant Of Good Faith And Fair Dealing Claim .........................................................................13

      3.  Common Issues Of Law And Fact Predominate With Regard To The UCL Claim.................................................15

4.      Common Issues Of Law And Fact Predominate With Regard To The Money Had And Received/Unjust Enrichment Claim ...........................................................................16

D.      Affirmative Defenses Are Not A Barrier To Class Certification. ..........17

        1.      Voluntary Payment Doctrine ..........................................17

        2.      Waiver, Estoppel, Unclean Hands ..................................18

        3.      Mitigation......................................................................18

        4.      Filed-Rate Doctrine.......................................................18

E.      Individual Damages Calculations Do Not Bar Class Certification......................................................................................19

        1.      The *Ninth* Circuit in *Leyva* Clarified *Comcast*. ...........................19

        2.      Class Members' Damages Are Equal to Commissions and Administrative Costs Included in the Amounts Charged for FPI.............................................................20

        3.      Classwide Damage Models Have Been Accepted In Other Cases. ..................................................................21

F.      Defendants' Superiority Argument Is Really Just A Request That The Court Take A Pass On Holding It Accountable for The Violations Raised. ..............................................................21

        1.      Class Actions Are The Superior Way To Resolve These Disputes.........................................................................21

G.      Plaintiffs Request That The Court Modify The Proposed Exclusions To The Class Definition. ...............................................22

H.      Mrs. Cai Is A Member of the Florida Subclass..............................233

I.      Mr. Cai Is An Adequate Representative Who Presents Typical Claims.................................................................................................24

J.      There Is No Reason to Exclude Persons Force-Placed With Flood or Wind Coverage From the Class as the Same Policies Apply. ................................................................................................25

III.   CONCLUSION.................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Abels v. JPMorgan Chase Bank, N.A.,* 678 F.Supp.2d 1273,
(S.D. Fla.2009).................................................................. 13, 14, 19

*Astiana v. Dreyers Grand Ice Cream,* 2012 WL 2990766,
(N.D. Cal. July 20, 2012)...................................................25

*Beck-Ellman v. Kaz, USA, Inc.,* 283 F.R.D. 558, (S.D. Cal. 2012)............................25

*Brown v. Hain Celestial Gp,* 913 F.Supp. 2d 881 (N.D. Cal. 2012) .....................25

*Cannon v. Wells Fargo Bank, N.A.,* 917 F.Supp.2d 1025, (N.D. Cal. 2013)........17, 19

*Cohen v. Am. Sec. Inc. Co.,* 735 F.3d 60 (7th Cir., 2013) ...............................10

*Comcast, Inc. v. Behrend,* 133 S. Ct. 1426 (2013) ......................................19

*Donohue v. Apple, Inc.,* 871 F.Supp.2d 913, (N.D. Cal. 2012)..................................25

*Dupler v. Costco Wholesale Corp.,* 249 F.R.D. 29, (E.D.N.Y. 2008)........................5

*Easterling v. Connecticut Dep't of Correction,* 278 F.R.D. 41,
(D. Conn. 2011) ...............................................................18

*Ellsworth v. U.S. Bank, N.A.,* No. C 12-02506 LB, 2014 WL 2734953
(N.D. Cal. June 13, 2014) ................................................. passim

*Ewert v. eBay, Inc.,* 2010 WL 4269259, (N.D. Cal. Oct. 25, 2010)........................5

*First Commercial Mortgage Co. v. Reece,* 89 Cal. App. 4th 731, (2001)...............6, 18

*Gooden v. Suntrust Mortg. Inc.,* No. 2:11–cv–02595, 2013 WL 6499250
(E.D. Cal. Dec. 11, 2013)....................................................2

*Gordon v. Chase Home Finance, LLC,* No. 8:11–cv–2001–T–33,
2013 WL 436445, (M.D. Fla. Feb. 5, 2013) ........................2, 14

*Gustafson v. BAC Home Loans Servicing, LP,* 294 F.R.D. 542
(C.D. Cal. 2013) ...............................................................2, 14

*Ham v. Swift Transp. Co., Inc.,* 275 F.R.D. 475, (W.D. Tenn. 2011) ......................18

*Hamilton v. Suntrust Mortgage Inc.,* 6 F.Supp.3d 1300, (S.D. Fla.2014).................12

*Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago,*
121 F.R.D. 664, (N.D. Ill. 1988).............................................5

*Hofstetter v. Chase Home Fin., LLC,* 2011 WL 1225900 (N.D. Cal. Mar. 31,
2011) .............................................................................2, 16

*In re Abbott Labs Norvir Antitrust Litig.,* 2007 WL 1689899,
(N.D. Cal. June 11, 2007)...................................................17

*In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, (S.D. Fla. 2011) .............15

*In re Conseco Life Ins. Co.,* 270 F.R.D. 521, (N.D. Cal. 2012) ...........................10, 11

*In re Conseco Life Ins. Co.,* 990 F. Supp.2d 050 (N.D. Cal 2013)...................... 10, 11

*In re High-Tech Employee Antitrust Litig.*, 2013 WL 1352016
(N.D. Cal. Apr. 5, 2013) .............................................................................19

*In Re Med. Capital Secs. Litig.,* No. SAML 10–2145 DOC (RNBx),
2011 WL 5067208, (C.D. Cal. Jul. 26, 2011)..............................................5

*In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal. 2010) ...........................25

*In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583,
(N.D. Cal. 2010) *am in part*, 2011 WL 3268649 (N.D. Cal. July 28, 2011)...........23

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, (2d Cir. 2001) ..........18

*Int'l Star Registry v. Omnipoint Mktg., LLC,* 510 F. Supp. 2d 1015,
(S.D. Fla. 2007).............................................................................................6

*Keele v. Wexler*, 149 F.3d 589, (7th Cir. 1998) ..........................................................5

*Keilholtz v. Lennox Health Prods. Inc.*, 268 F.R.D. 330, (N.D. Cal. 2010)...............17

*Kingsbury v. U.S. Greenfiber, LLC*, 2011 WL 2619231,
(C.D. Cal. May 23, 2011)...........................................................................23

*Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, (N.D. Ga. 1983) .....................5

*Koh v. S.C. Johnson & Son,* 2010 WL 94265, (N.D. Cal. Jan. 6, 2010) ....................25

*Kunzelmann v. Wells Fargo Bank, N.A.,* No. 9:11–cv–81373,
2013 WL 139913, (S.D. Fla. Jan. 10, 2013).................................................2

*Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410
(N.D. Cal. June 21, 2013) ................................................................. passim

*Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, (N.D. Cal. 2013) ...........19

*Leyva v. Medline Ind.*, 716 F.3d 510, (9th Cir., 2013)..................................................19

*Longest v. Green Tree Servicing*, 2015 WL 546095,
(C.D. Cal. Feb., 9 2015)................................................................. 10, 11, 12

*Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534, (N.D. Cal. 2010) .....................5

*McNeary–Calloway v. JP Morgan Chase Bank, N.A.,* 863 F.Supp.2d 928,
(N.D. Cal.2012)...........................................................................................14

*Menangerie Prods. v. Citysearch*, 2009 WL 3770668,
(C.D. Cal. Nov. 9, 2009)..............................................................................5

*Mortimore v. F.D.I.C.*, 197 F.R.D. 432, (W.D. Wash. 2000)......................................5

*Motors, Inc. v. Times Mirror Co.,* 102 Cal.App.3d 735, 162 Cal.Rptr. 543
   (1980) ..........................................................................................................15

*Munoz v. PHH Corp.*, 2013 WL 2146925 (E.D. Cal. May 15, 2013) ........................19

*Passantino-Miller v. Wells Fargo Bank*, 2013 WL 57024
   (E.D. Cal. Jan 3, 2013) .............................................................................12

*Percover v. Elec. Arts, Inc.*, 2101 WL 8742757, (N.D. Cal. 2010) ...........................25

*Perryman v. Litton Loan Servicing, LP,* 2014 WL 4954674,
   (N.D. Cal. Oct. 1, 2014) ..........................................................................12

*Persaud v. Bank of Am., N.A.,* 2014 WL 4260853, (S.D.Fla. Aug.28, 2014) .............12

*Phelps v. 3PD, Inc.*, 261 F.R.D. 548, (D. Or. 2009)...............................................5

*Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163, (E.D. Cal. 2010)...............10

*Sacred Heart Health Systems, Inc. v. Humana Military Healthcare*,
   601 F.3d 1159, (11th Cir. 2010) ...............................................................5

*Schulken v. Washington Mutual Bank*, 2012 WL 28099,
   (N.D Cal. Jan. 5, 2012) ............................................................................5

*Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32,
   (1st Cir. 2003) .........................................................................................5

*Susilo v. Wells Fargo Bank, N.A.,* 796 F.Supp.2d 1177, (C.D. Cal.2011) .................13

*Valdez v. Saxon Mortgage Services, Inc.*, No. 2:14-cv-0395-CAS (MANx)
   (C.D. Cal. Sept. 29, 2014)........................................................................11

*Vedachalam v. Tata Consultancy Servs., Ltd.*, 2012 WL 1110004,
   (N.D. Cal. Apr. 2, 2012) ..........................................................................10

*Wahl v. Am. Sec. Ins. Co.*, 2010 WL 1881126, (N.D. Cal. May 10, 2010).... 2, 4, 15, 16

*Walters v. Fid. Mortg. of Cal.,* 2010 WL 1493131, (E.D.Cal. Apr. 14, 2010) ...........16

*Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665 (S.D. Fla 2012) .............. passim

*Wolin v. Land Rover*, 619 F.3d 1168 (9th Cir. 2010) ............................................21

*Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, (9th Cir. 2010).................19

*Yue v. Conseco Life Inc. Co.*, 282 F.R.D. 469, (C.D. Cal. 2012) ....................2, 13, 15

**Other Authorities**

Cal. Civ. Code §3281 .............................................................................................20

## I.   INTRODUCTION

In their brief opposing Plaintiffs' Motion for Class Certification, Defendants Green Tree Servicing and Green Tree Insurance Agency fail to come to terms with the fundamental issues and case law that confirm that certification of this limited two-state class is appropriate here.  Three common errors permeate throughout their brief.

First, while numerous courts in California and Florida have granted similar state-class motions for class certification, Defendants almost completely ignore those decisions and instead attempt to focus the court's attention on decisions where certification of *national* classes was denied for reasons that do not apply here, such as the perceived differences between the 50 states' laws or because class members had varying types of mortgage contracts.  In a case such as this, which is limited to only two state subclasses where all class members share the *same* standard form contract, such issues do not exist.  Therefore, certification is proper as the court in *Ellsworth v. U.S. Bank, N.A.,* No. C 12-02506, 2014 WL 2734953 *24-26 (N.D. Cal. June 13, 2014) recognized after conducting a detailed analysis of the cases Defendants' rely.

Second, Defendants gloss over the fact that both federal and state agencies have recently conducted investigations into the types of practices at issue here and found that the types of common practices employed are unfair to consumers, involve excessive FPI rates, which support hollow "commissions" for illusory services. Given that such conclusions could be reached after the agencies conducted their own portfolio-wide investigations, it is difficult to see why a similar analysis could not be conducted on a classwide basis here.

Finally, in addressing the specific elements of Rule 23, Defendants resort to a "kitchen sink" approach but in doing so fail to recognize that most, if not all of their arguments have already been rejected by this or other California courts. As Judge Matz noted when granting class certification in a case involving one of Defendants' other subsidiaries, "Defendant attempts to conjure up complicated, individualized issues where none exist." *Yue v. Conseco Life Inc. Co.*, 282 F.R.D. 469, 478 (C.D. Cal.

2012).  The same holds true here.  For all of the reasons stated, Plaintiffs motion for class certification should be granted

## II.    ARGUMENT

**A.    Plaintiffs Have Narrowly Tailored The Class Definition To Avoid The Issues Presented In The National Class Cases Which Defendants Rely.**

Recognizing the problems that courts have had certifying national classes in the forced placed insurance area, but not in more limited state classes, Plaintiffs here narrowly tailored their class definition to only include class members from two states, who are subject to the same form mortgage contracts, and proposed subclasses for each.  As made clear in Plaintiffs' opening brief, federal courts in both California and Florida have found that certification is appropriate when classes are limited in this manner. *Ellsworth*, 2014 WL 2734953 *30 (N.D. Cal. June 13, 2014)(certifying California and New Mexico subclasses); *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665 (S.D. Fla. 2012) (Florida class); *Wahl v. Am. Sec. Ins. Co.*, 2010 WL 1881126, at *7-10 (N.D. Cal. May 10, 2010)(California class); *Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410 (N.D. Cal. June 21, 2013) (same); *Hofstetter v. Chase Home Fin., LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) (same).

Here, Plaintiffs follow the guidance provided in those opinions, which make clear that the claims of all claim members within a state can be decided by applying common evidence pertaining to Defendants' automated FPI processes to state laws uniformly applicable to each subclass member. In contrast, the cases upon which Defendants primarily rely, *Rapp v. Green Tree Servicing, LLC, et al.,* No. 12-cv-2496, 2014 WL 3846032, at *2 (D. Minn. Aug. 5, 2014);  *Gustafson v. BAC Home Loans Servicing, LP,* 294 F.R.D. 542–47 (C.D. Cal. 2013); *Gordon v. Chase Home Finance, LLC,* No. 8:11–cv–2001–T–33, 2013 WL 436445, at *2, *5 (M.D. Fla. Feb. 5, 2013); *Kunzelmann v. Wells Fargo Bank, N.A.,* No. 9:11–cv–81373, 2013 WL 139913, at *2, *5–6, (S.D. Fla. Jan. 10, 2013) and *Gooden v. Suntrust Mortg, Inc.,* No. 2:11–cv–02595, 2013 WL 6499250 (E.D. Cal. Dec. 11, 2013), share common themes: all

sought national classes, did not restrict the class to borrowers with the same form contracts, nor propose state subclasses. *Ellsworth* at *23-25 (summarizing each of the above cases and finding them "distinguishable"). By more narrowly defining the class, the concerns raised in the cases Defendants rely upon are easily dismissed.

**B.    Defendants Ignore The Fact That Federal And State Agencies Have Had No Difficulty Evaluating The Challenged Practices In Single Proceedings.**

Defendants' opposition papers fail to address the fact that many of the same practices challenged here have largely been banned after federal or state agencies completed portfolio-wide investigations into Assurant's forced placed insurance policies. The fact that these agencies were able to reach such conclusions after examining evidence of Assurant's common methods of dealing with referring lenders and their wholly-owned insurance "agencies" confirms that the types of individualized inquiries Defendants raise are unnecessary and are really nothing more than red herring arguments manufactured to try to dissuade the Court from certifying the proposed classes. The only reference Defendants make to these enforcement actions is to claim in their evidentiary objection (Doc 82) that they have no applicability because they involved investigations of Assurant, not Green Tree. However in arguing this, Defendants miss the point. Assurant is the insurer that entered into common kickback arrangements with numerous servicers and their affiliated "agencies" throughout California and Florida, *including Defendants*. By concluding that Assurant's practices were improper is to say the same about Defendants since they were Assurant's partners in these dealings.

**C.    Common Issues of Law and Fact Predominate On All Claims.**

Federal courts in California and Florida have found, in certifying similar state classes, that common issues of law and fact predominate when evaluating breach of contract, breach of implied covenant of good faith and fair dealing, UCL and the money had and received claims at issue here. *See*, *Ellsworth*, 2014 WL 2734953 *30; *Wahl*, 2010 WL 1881126, at *7- 10 (certifying California class against Assurant

subsidiary on UCL claims).  In fact, *Wahl* involved many of the same practices at issue here since it involved claims against the same Assurant subsidiary that contracted with Defendants and engaged in the same type of kickback scheme challenged here.  If Assurant's practices with the broader group of *all* servicers and affiliated insurance agencies that it contracted with in California were able to be managed as a class action in that case, certainly the narrower claims involving  only a *single* lender and its' affiliated insurance agent here, should be able to.

Critically, most of Defendants' arguments focus on the wrong practices challenged.  Defendants would like the Court to believe that Plaintiffs' challenge is to the placement of force-placed insurance in and of itself. However as recognized in *Williams*, 80 F.R.D. at 674, this misconstrues the types of claims actually presented:

> The Plaintiffs claim is that Wells Fargo and QBE secretly colluded to artificially and unjustly inflate the cost of the force-placed insurance. Therefore, it is not relevant whether a particular class member was aware that force-placed insurance is generally more expensive because the claim in this case is not just that the force-placed insurance was more expensive, but that the force-placed insurance was artificially and unjustly more expensive due to the illicit actions of Wells Fargo and QBE…As the Plaintiffs have articulated, "[i]t is not the *amount* of the premiums that Plaintiffs challenge; it is what was included in those amounts after the premiums had been manipulated by Defendants' force-placed scheme."

The arguments in Defendants' opposition, therefore, consist primarily of straw men offered solely for the purpose of knocking them down.  When Plaintiffs' actual claims are considered, it becomes clear that certification is proper as "[t]he challenged practices are the same, the insurer ASIC is the same, and the legal issues generally are the same: were the practices lawful under the standard mortgage contract or under state laws regarding the implied covenant of good faith and fair

dealing, unjust enrichment, or unfair competition." *Ellsworth*, 2014 WL 2734953 at *19-20. "The essence of this case, as alleged, is a common scheme to systematically and without any individual consideration, force-place insurance at an excessive rate to every person whose self-placed property insurance had lapsed. The determination of the truth or falsity of the Plaintiffs' allegations that [loan servicer] and [insurer] engaged in a scheme to force-place insurance with inflated and excessive premiums will resolve an issue that is central to the validity of each one of the claims in one stroke." *Williams*, 80 F.R.D. at 672.

### 1.  Common Issues Of Law And Fact Predominate With Regard To The Breach Of Contract Claim.

#### a.  Claims Involving Breach Of Standard Form Contracts Are Properly Certified.

"Courts routinely certify class actions regarding breaches of form contracts." *In Re Med. Capital Secs. Litig.,* No. SAML 10–2145 DOC (RNBx), 2011 WL 5067208, at *3 (C.D. Cal. Jul. 26, 2011) (collecting cases).[1] The elements of a breach

---

[1]  *See also Sacred Heart Health Systems, Inc. v. Humana Military Healthcare*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment"); *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 42 (1st Cir. 2003) ("Overall, we find that common issues of law and fact predominate here. The case turns on interpretation of the form contract, executed by all class members and defendant."); *Keele v. Wexler*, 149 F.3d 589, 594-95 (7th Cir. 1998) (citing *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 691 (N.D. Ga. 1983)) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action"); *Schulken v. Washington Mutual Bank*, 2012 WL 28099, at *13 (N.D Cal. Jan. 5, 2012) (certifying class alleging breach of form contract); *Ewert v. eBay, Inc.*, 2010 WL 4269259, *7 (N.D. Cal. Oct. 25, 2010) (same); *Menangerie Prods. v. Citysearch*, 2009 WL 3770668, at *9-10 (C.D. Cal. Nov. 9, 2009) (commonality and predominance requirements satisfied where "the claim arises from a standard form contract"); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) ("An overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action treatment."); *Mortimore v. F.D.I.C.*, 197 F.R.D. 432, 438 (W.D. Wash. 2000) ("Since this case involves the use of form contracts, it is particularly appropriate to use the class action procedure."); *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 121 F.R.D. 664, 669 (N.D. Ill. 1988) ("Since plaintiffs' claims arise from allegations of common practice and rights derived from form contracts, the case appears to present the classic case for treatment as a class action."); *Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534, 539-41 (N.D. Cal. 2010) (commonality and predominance requirements satisfied where plaintiff's claim was "subject to proof through one set of loan documents"); *Phelps v. 3PD, Inc.*, 261 F.R.D. 548, 560 (D. Or. 2009).

of contract claim in both Florida and California are the same.  Each state requires proof of a: (1) valid contract supported by adequate consideration, (2) breach and (3) damages.  *First Commercial Mortgage Co. v. Reece,* 89 Cal. App. 4th 731, 745 (2001); *Int'l Star Registry v. Omnipoint Mktg., LLC,* 510 F. Supp. 2d 1015, 1022 (S.D. Fla. 2007).  Here, these elements can all be established through common evidence. As demonstrated in Plaintiffs' Opening Brief, here all class members have common Fannie Mae/Freddie Mac loan agreements that are supported by consideration (the promise to pay), which contain the same "Uniform Covenants" in ¶5 and ¶9, which pertain to FPI.  All class members' contracts contain the same operative language in ¶5 which provides, in pertinent part:

> …Borrower acknowledges that the ***cost of the insurance coverage*** so obtained might significantly exceed the cost of insurance that Borrower could have obtained. ***Any amounts disbursed*** by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  ***These amounts*** shall bear interest at the Note rate from the date of disbursement and ***shall be payable***, with such interest, upon notice from Lender to Borrower requesting payment.

(Ex. 36, 37)(emph. added).  Likewise, ¶9 of all class members' contracts provide that "if Borrower fails to perform the covenants and agreements contained in this Security Instrument…then Lender may do and pay ***for whatever is reasonable*** or appropriate to protect Lender's interest in the Property and rights…" (emph. added).

Therefore, entirely common questions are presented as to whether Defendants violated these uniform clauses in each class members' transaction by: (1) charging them for amounts that were not the true "cost of insurance," but involved a common 35% kickback component; (2) were never actually "disbursed by Lender";  and/or (3) were well beyond what was "reasonable or appropriate to protect the Lender's interest in the Property" and instead was an attempt to self-deal and create a huge new profit center. Proof of these breaches will not be through individualized evidence

from particular class members' transactions or testimony of subjective intent; instead it will be through proof of the five common contracts Defendants had with Assurant, and other uniform evidence and testimony describing the manner in which the "automated" business model at issue operated.

### b. Determining Whether The "Cost of Insurance" Included Kickbacks Is A Common Issue.

Here, determining whether the charges imposed on consumers were limited to the cost of insurance, or instead included a 35% kickback component is an entirely common issue, resolved at trial through evidence applicable to all class members' transactions.   That no individual inquiries are necessary given the nature of these transactions is confirmed by the five common contracts between Defendants and Assurant, not any unique dealings with class members.   As pointed out in Plaintiffs' opening brief, under the Agency Contract a standard 35% "commission" was collected and retained in all class members' transactions.   The common Agency Contract contains a list of services that must be performed to earn the commission. But common evidence shows that all of these functions were simultaneously contracted back to Assurant to perform, and for amounts not approaching anything close to the 35% charge, but rather for a mere 12 cents per loan per month ($1.44 / year) under the Tracking Agreement and $1 under the Collection and Trust Agreements. Thus, common evidence will show that all class members' FPI charges included a common component that was not for the "cost of insurance," but instead was a convoluted way to leave a 35% kickback with Defendants for self-dealing.

### c. Determining Whether Borrowers Were Charged For Amounts Beyond Those "Disbursed by Lender" Is Established With Common Evidence.

Here, both Servicing and Agency's Rule 30(b)(6) corporate representative, Andrew Jeska, testified that in all transactions, after collecting the FPI premium, only the "net" premium was actually disbursed to the third-party insurer, Assurant, while Servicing retained the remaining 35% "commission." Jeska I at 100-105, 136-

137, 182, 258. Despite it being a specific topic on the Rule 30(b)(6) deposition notices, when deposed, Mr. Jeska had no knowledge of where the remaining 35% went after being collected by Servicing, including any knowledge of whether the money was ever actually disbursed to Agency. *Id.* At trial, this will be an entirely common issue, since it deals with a single, systematic collection procedure that was employed across-the-board in all class members' transactions. While now Mr. Jeska vaguely offers, without any further description, that "the commissions are allocated from an accounting perspective to [Agency]," quite tellingly, he is still unable to testify that the remaining funds collected were actually disbursed. Jeska Decl. at ¶4 (Doc. 84). Therefore, whether this common procedure amounts to a true "disbursement," authorizing the charge to be made against the borrower under ¶5 of the standard form mortgage, is an entirely common issue. The answer of that question need not be resolved now; the only pertinent inquiry at this stage is whether it is common so that at the time it is ultimately resolved in one borrower's case, it will be resolved for all. To alternatively require tens of thousands of repetitive trials on this same issue, as Defendants suggest, would be beyond redundant.

> **d.**   **Common Evidence Establishes That The Amounts Charged Was Not Limited To That "Reasonable or Appropriate to Protect Lender's Interest in The Property" and Instead Was An Attempt To Self-Deal and Create A New Profit Center.**

Whether or not the FPI premiums charged to class members were limited to that "reasonable or appropriate to protect Lender's interest in the Property and rights," as required under ¶9, is also subject to classwide proof given the common evidence showing that all functions listed in the Agency Contract as supporting the common 35% "commissions" received were contracted back to either Assurant or Servicing to conduct for a mere fraction of that amount under the Tracking and Collection Agreements. Facts show that rather than attempt to limit charges to that "reasonable or appropriate to protect Lender's interest in the Property," Defendants' primary goal in its arrangements for FPI was to create a new profit center for itself,

where the financial burden fell entirely on the borrowers.  This continues to be shown by Defendants' parent's 10K filings with the SEC, where they inform investors that despite the recent federal and state agencies' orders banning further payment of commissions, they continue to "aggressively" look for manners in which to bypass those restrictions and replace that lost revenue stream. Jeska I at 233-37 (Ex. 1).

### e. There Is No Need To Consider Any Parol Evidence On Contract Formation Or Extrinsic Evidence As To The Meaning Of Terms In A Standard Form Mortgage Contract.

As both Servicing and Agency's Rule 30(b)(6) corporate representative testified, Defendants use an entirely "automated" process that never requires any individualized review of particular borrower's loan documents or consideration of "parol evidence" or "extrinsic evidence," before assessing any FPI charge on any class member. Jeska I at 252-25, 154, 220-236; Jeska II at 56-57 (Ex. 2) ("We have put together, in conjunction with Assurant, some very automated processes that don't require, necessarily, individual account review information."). Therefore, it is difficult to see why such a process would suddenly be necessary at this point.  In granting class certification in *Ellsworth*, the court specifically explained how arguments like those presented by Defendants here are misplaced:

> These are form Fannie Mae/Freddie Mac Uniform Instrument mortgage
> contracts, Plaintiffs challenge Defendants' uniform FPI policies, and the
> alleged injury is the backdating and kickbacks. It is hard to see what
> extrinsic evidence would be relevant to interpreting the form contract
> terms or U.S. Bank's liability based on these theories, and U.S. Bank
> does not identify any extrinsic evidence or ambiguous contract terms.
> Also, with identical form contracts, courts in this district generally hold
> that extrinsic evidence is unlikely to be important, and ambiguous terms
> would be construed against the drafter…In sum, issues regarding
> extrinsic evidence do not necessarily defeat predominance in a case
> involving form contracts and, for the reasons stated above, do not defeat

PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN FURTHER SUPPORT OF PLAINTIFFS' REVISED MOTION FOR CLASS CERTIFICATION

9

predominance in this case. It is not obvious that extrinsic evidence will be introduced at all, and at best (and on this record, entirely hypothetically), it would be non-individualized extrinsic evidence.

In granting class certification in *In re Conseco Life Ins. Co.,* 270 F.R.D. 521, 529 (N.D. Cal. 2012), a case challenging the insurance practices of another one of the Defendants' affiliates, Judge Illston further explained:

> …[T]he Court agrees with plaintiffs that, as neither party has asserted that the form policy contract contains ambiguous terms (rather, they offer competing interpretations based on the face of the documents), admission of extrinsic evidence should not be necessary to interpret the contractual provisions at issue. Plaintiffs' contractual interpretations may ultimately be rejected at the summary judgment stage or disproved at trial, but they are not patently untenable from the face of the documents, and do not demonstrate a lack of common issues of law.

*See also In re Conseco Life Ins. Co.,* 990 F. Supp.2d 050 (N.D. Cal 2013)(same, denying motion to decertify class); and *Vedachalam v. Tata Consultancy Servs., Ltd.,* 2012 WL 1110004, at *9 (N.D. Cal. Apr. 2, 2012) (courts interpret form contracts of adhesion as treating all those similar situated alike without regard to their knowledge or understanding of the standard terms in order to effectuate the reasonable expectations of an average person).

Lastly, parol evidence may not be used to vary the terms of a mortgage contract. *Quinteros v. Aurora Loan Servs.,* 740 F. Supp. 2d 1163, 1171 (E.D. Cal. 2010) ("A mortgage or deed of trust…comes within the statute of frauds.") (citation omitted). Defendants' only response is to rely on *Cohen v. Am. Sec. Inc. Co.,* 735 F.3d 60 (7th Cir., 2013), without recognizing that this Court previously rejected *Cohen* as a non-binding outlier in its prior order denying Defendants' motion to dismiss. *See Longest v. Green Tree Servicing,* 2015 WL 546095 at *4 (C.D. Cal. Feb., 9 2015). *See Valdez v. Saxon Mortgage Services, Inc.,* No. 2:14-cv-0395-CAS

(MANx) at *28, 30-32 (C.D. Cal. Sept. 29, 2014)(rejecting the interpretation of *Cohen* Defendants advance). Given that Defendants here show no need to consider extrinsic evidence pertaining to the formation of standard form contracts, that in any event is to be construed against it, the court should adopt the well-reasoned opinions in *Ellsworth* and *Conseco* and find that individual issues do not predominate.

### f.   Proof Of Performance In The Manner Described By Defendants Is Not An Element Of The Contract Claim.

Defendants next suggest that class members' claims should be automatically defeated by the simple fact they failed to maintain insurance and were in a position to be force-placed in the first place. This argument is illogical and contrary to the contracts, as well as Court's prior order denying Defendants' motion to dismiss. *See Longest,* 2015 WL 546095 at *4, 6; *see also Valdez*, 2014 WL 7968109.

The common mortgage contracts at issue here fully contemplate situations where borrowers fail to maintain insurance and go on to define in ¶5 and ¶9 certain limitations as to what can be charged to the borrower in such circumstances. ("9. *If Borrower fails to perform* the covenants and agreements contained in this Security Instrument…*then* Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest…")  Those are the terms that Plaintiffs allege have been breached. Defendants' contrary argument that once in a force-placed insurance situation, class members have absolutely no recourse against lenders engaging in overly abusive practices, amounts to little more than a request that the Court grant them complete immunity and unlimited discretion to self-deal and charge consumers whatever they want. Such an argument must be rejected.  As the Court previously explained in rejecting such arguments: "But…if this were the rule, it would grant unfettered license to mortgage servicers to mark-up the charges for force-placed insurance with no limit whatsoever." *Longest,* 2015 WL 546095 at *5 citing *Perryman v. Litton Loan Servicing, LP,* 2014 WL 4954674, at *12 (N.D. Cal. Oct. 1,

2014).[2] *See also Longest,* at *6 (noting "several courts have rejected the very argument presented by defendants here" *citing, Persaud v. Bank of Am., N.A.,* 2014 WL 4260853, at *8 (S.D.Fla. Aug.28, 2014)) ("Contrary to Defendants' argument, the fact Plaintiff initially breached the Mortgage when his insurance policy lapsed does not preclude his breach of contract claim."); *Hamilton v. Suntrust Mortgage Inc.,* 6 F.Supp.3d 1300, 1309 (S.D. Fla.2014) (same).

### g.   Defendants' Disclosure Arguments Remain Misplaced.

Finally, Defendants suggest that "contract formation and loan origination issues" preclude class certification arguing that borrowers received form disclosures indicating that commissions may be paid. Def. Brf. at 8. But review of the common form mortgage contracts to which all Class Members were party reveals nothing about any commissions being paid to the lender or its affiliates, much less any disclosure that the functions to be performed for the commissions were already contracted back to Assurant to perform for a tiny fraction of that amount. In any event, no letter sent months or years after contract formation can supplant the common contractual restrictions in ¶5 and ¶9 of the standard form mortgages that govern what can and cannot be charged. *Longest*, 2015 WL 546095 at *5-6 *citing Rapp v Green Tree Servicing*, 2013 WL 3992442 at *5 (D. Minn., Aug 5, 2013). Defendants cannot unilaterally modify a bilateral contract by sending a so-called form "disclosures" attempting to add or change terms in the midst of the force-placed process. Thus, regardless of what any subsequent letter said or did not say, Defendants are still bound by the terms of the form contract, which remains an entirely common issue that in no manner varies from class member to class member.

---

[2]   Defendants' continued reliance on *Passantino-Miller v. Wells Fargo Bank*, 2013 WL 57024 *5 (E.D. Cal. Jan 3, 2013) to suggest the opposite remains misplaced. The court in *Passantino* did not dismiss the contract claim with prejudice. Rather, it granted leave to amend to allege additional facts, which was done. 2013 WL 6671191. Shortly thereafter, the case settled. 2013 WL 6671192. Here, as the court previously recognized, Plaintiffs alleged classwide performance. *Longest*, 2015 WL 546095 at *6 citing FAC ¶21 ("[T]the failure…to maintain hazard insurance…does not result in a material failure to perform under the mortgage contract."). Since the standard is objective, it is capable of determination on a classwide basis.

Defendants' remaining arguments regarding the need to consider individualized proof of borrower's expectations at the time of loan origination are also misplaced.  As Judge Matz explained in rejecting similar arguments and granting class certification against one of Defendants' other affiliates:

> Defendant's primary argument is that Plaintiff's claims will require this Court to consider the subjective understanding of each class member at the time each policy was issued…The Court does not agree that individualized issues dominate Plaintiff's claims. Plaintiff has not alleged fraud, misrepresentation, or any other claims or theories that would require a showing of inducement or reliance. Instead, Plaintiff has alleged claims against Defendant for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing ("bad faith"), and (3) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code §17200. Contrary to Defendant's assertion, it is unlikely that the Court will have to consider the subjective understanding of any class member to assess the merits of these three claims.

*Yue v. Conseco Life Inc. Co.*, 282 F.R.D. 469, 476 (C.D. Cal. 2012). This is especially true here, given that Defendants concede that the process was fully automated and required absolutely no review of individual loan documents or evidence of borrower's expectations at the time of the FPI transactions.

## 2. Common Issues Predominate With Regard To The Breach Of Implied Covenant Of Good Faith And Fair Dealing Claim.

Both California and Florida courts recognize an implied covenant of good faith and fair dealing in every contract. *See Susilo v. Wells Fargo Bank, N.A.,* 796 F.Supp.2d 1177, 1188 (C.D. Cal.2011); *Abels v. JPMorgan Chase Bank, N.A.,* 678 F.Supp.2d 1273, 1278 (S.D. Fla.2009).  Although the implied covenant cannot vary the express terms of a contract, the failure to perform a discretionary act in good faith may be a breach of the implied covenant. *Id.* Thus, "where a contract confers on one

party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." *McNeary–Calloway v. JP Morgan Chase Bank, N.A.,* 863 F.Supp.2d 928, 956 (N.D. Cal.2012). *See Abels,* 678 F.Supp.2d at 1278 ("[W]here the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.").

Here, contrary to Defendants' suggestion, this claim can be established with common evidence as the required proof focuses on Defendants' common conduct in exercising its discretion to uniformly select Assurant as the common FPI provider in each class members' transaction in exactly the same manner. Facts here show that Servicing selected Assurant as the exclusive FPI provider because of the package of lucrative financial incentives offered in the RFP bid process (including the 35% commission, the $3.25 million payment and offer to conduct all "tracking" functions for a small 12 cent per loan monthly fee). As explained in *Ellsworth*:

> As to breach of the implied covenant of good faith and fair dealing, the analysis is the same because (whether through California or New Mexico law), the duty of good faith and reasonableness is rooted in form contracts and the application of uniform policies to the rights and obligations under those contracts. The duty does not require examining each plaintiff's individual expectations because those—as discussed in the subclassing section—are reflected in the contract. At best, the issue is U.S. Bank's conduct and reasonableness, and any issues there do not defeat the common issues.

2014 WL 2734853 at *27.

The contrary cases that Defendants cite are distinguishable. Certification of implied covenant claims in *Gustafson* and *Gordon* were denied either because of distinctions between the 50 states' laws or because class members had different

contracts – both matters of no concern here due to the limited class definition. Further, California and Florida courts have certified implied covenant of good faith claims finding that evidence of the subjective expectations of each class member is unnecessary. *See Yue*, 282 F.R.D. at 476; *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 680 (S.D. Fla. 2011) ("[I]t is not the case that the individual Plaintiffs' and class members' subjective expectations are necessary to prove their claims. To the contrary, breach of the duty of good faith and fair dealing may be shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct.").[3]  The Court should do the same here.

### 3.   Common Issues Of Law And Fact Predominate With Regard To The UCL Claim.

Defendants argue that Plaintiffs' UCL claim cannot be certified because they involve individualized evidence and review of the form disclosures that they provided consumers.  Defendants' arguments here regarding the burdens of proving this claim are exaggerated as well.

As to the "unfair" prong of the UCL, California courts apply a balancing test. Under that test, "the determination of whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court…weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victims." *Motors, Inc. v. Times Mirror Co.,* 102 Cal.App.3d 735, 740, 162 Cal.Rptr. 543 (1980); *Wahl*, 2010 WL 1881126 at *8-10.

The question here is not simply whether the placement of FPI policies in the event of a lapse was unfair. Rather, the question is whether it was unfair for

---

[3]  *See also Ewert v. eBay, Inc.,* 2010 WL 4269259 at *7 (N.D. Cal. Oct. 25, 2010) ("eBay…claims that individualized inquiry into the knowledge of each class member is needed to determine liability for breach of contract. However, as plaintiffs point out, when there is a standardized agreement like the form contract at issue in this case, the agreement 'is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.'") (citing RESTATEMENT (SECOND) OF CONTRACTS §211(2)).

Defendants to self-deal by arranging for kickbacks from a high-cost provider as an incentive for the referral, while at the same time all of the listed services for the "commission" were contracted back to Assurant for a fraction of the cost. Recognizing this, other FPI cases in this district have certified UCL claims. As explained in *Ellsworth* "[w]hether a practice is unfair in the context of legislative policy, or whether harms outweigh utilities, are questions capable of classwide resolution"). Further, "[e]ven if a borrower has been charged but has not yet paid for the expenses, the debt is an economic injury and lien upon his property sufficient to confer standing to assert a claim under the unfair competition law (charges for borrowers who have been excused from payment of their loan, and associated expenses, such as through foreclosure, are excluded from the class definition)." *Lane*, 2013 WL 3187410 at *11. In fact, in a case challenging Assurant's same kickback practices, Judge Metz granted class certification of the UCL "unfair" claim. *Wahl*, 2010 WL 1881126 at *8-10. *See also Hofstetter*, 2011 WL 1225900 at *12-14.

### 4. Common Issues Of Law And Fact Predominate With Regard To The Money Had And Received / Unjust Enrichment Claim.

As to money had and received / unjust enrichment claims, the law is similar in California and Florida: both require proof of retention of a benefit by Defendants that is unjust. *See Walters v. Fid. Mortg. of Cal.,* 2010 WL 1493131, at *12 (E.D.Cal. Apr. 14, 2010) ("to state a claim for restitution, a plaintiff 'must plead receipt of a benefit and the unjust retention of the benefit at the expense of another.'")

Here, Defendants raise similar challenges to the request to certify this claim, as they do with the UCL claim. Similar to the UCL claim, however, the question is not whether the mere placement of FPI was unjust. Rather, the question is whether it was unjust for Defendants to arrange for a 35% rebate of each FPI premium to be kicked back from Assurant as an incentive for the referral (in addition to the $3.25 million up-front incentive payment for the exclusive arrangement), while at the same time contracting back all of the listed "services" that support the "commission" for

Assurant to perform for a fraction of the cost.  Recognizing this, courts have certified such claims. *Lane*, 2013 WL 3187410 at *5. *See also Keilholtz v. Lennox Health Prods. Inc.*, 268 F.R.D. 330, 34-43 (N.D. Cal. 2010); *In re Abbott Labs Norvir Antitrust Litig.*, 2007 WL 1689899 at *10  (N.D. Cal. June 11, 2007).  As explained:

> Again, the case remains about the reasonableness of the kickbacks or backdating, not choices that buyers make to take an easy insurance option.  In sum, given the classic class-wide questions that can be answered the same way for all borrowers, on this record, and in accord with other decisions in this district, the court finds that individual issues do not defeat predominance on the unjust enrichment claim.

*Ellsworth,* 2014 WL 2734953 at *28.  The same holds true here.

**D.  Affirmative Defenses Are Not A Barrier To Class Certification.**

Next, Defendants assert that because they assert certain affirmative defenses, the motion should be denied.  This contention is misplaced as demonstrated in both *Lane*, 2013 WL 3187410 at *8, and *Ellsworth,* 2014 2734953 at *29 where near identical arguments were squarely rejected as a basis for denying class certification.

**1.   Voluntary Payment Doctrine:**  Defendants argue that the "voluntary payment doctrine" defense prevents certification.  This argument, however, was specifically rejected in both *Lane* at *8 and *Ellsworth* at *29.  Further, it should be rejected as it misconstrues the claims asserted. *Ellsworth* at *29 ("The court also dismissed the bank's possible defense of voluntary payment on the ground that the point of the lawsuit was to challenge the increased cost passed on to them either by kickbacks included in the costs or by charging class members for costs not actually incurred (and was not about the bank's purchase of insurance on the borrowers' behalf).") For this reason, other courts have rejected this "voluntariness" defense.[4]

---

[4] *See, e.g., Cannon v. Wells Fargo Bank, N.A.*, 917 F.Supp.2d 1025, 1053 (N.D. Cal. 2013) ("[E]ven if the force-placed insurance was procured because Plaintiffs failed to pay for their flood insurance, that does not mean that Defendants could do whatever they wanted with respect to the force-placed insurance…That the force-placed insurance was triggered by Plaintiff's conduct does not negate allegedly inequitable

**2.    Waiver, Estoppel, Unclean Hands:**  Defendants claim that certification should be denied because they assert affirmative defenses of waiver, estoppel and unclean hands.  Again, like their arguments pertaining to the voluntary payment defense, these arguments are all based on a common misunderstanding of the claims actually sought to be certified here.  The contracts specifically contemplate situations where borrowers may be force-placed but place limits on the Defendants' conduct in doing so.  Plaintiffs do not challenge the mere fact they were force-placed; rather, they challenge the manner in which they were forced-placed – in an unreasonable and excessive manner through Defendants' attempt to self-deal, in violation of the contractual restrictions.  As the courts in *Lane*, 2013 WL 3187410, at *8 and *Ellsworth,* 2014 2734953 at *29 recognized, to the extent even applicable, these defenses are capable of resolution on a classwide basis considering uniform evidence.

**3.    Mitigation:**  Defendants claim that the borrower class members' failure to mitigate damages defense prevents certification but again, courts have rejected the exact same arguments in granting class certification.  As the court in *Ellsworth* explained: "In concluding that the same defenses did not defeat predominance in a similar FPI case against Wells Fargo Bank, the *Lane* court observed that the bank applied the same policies and procedures for FPI for all loans, and sent the same notices of warning, which meant that the success or failure of the defenses were susceptible to common methods of proof").[5]  The same holds true here.

**4.    Filed-Rate Doctrine:**  Defendants' argument regarding the filed-rate doctrine also misses the mark for several reasons.  First, the doctrine is inapplicable because a challenge to a kickback is not the same as a challenge to a filed rate.

_____

conduct by Defendants."); *Rapp,* 2013 WL 3992442, at *9; *Williams v. Wells Fargo Bank, N.A.,* 2011 WL 43689820, at *10 (S.D. Fla. Sept. 19, 2011) ("*Williams I*").

[5]   *See also Easterling v. Connecticut Dep't of Correction,* 278 F.R.D. 41, 50 (D. Conn. 2011) ("individual mitigation issues" do not defeat predominance because they "are less substantial than the issues that will be subject to generalized proof"); *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 139 (2d Cir. 2001) (same); *Ham v. Swift Transp. Co., Inc.,* 275 F.R.D. 475, 487-88 (W.D. Tenn. 2011) (defenses "premised on the allegation that at least some of the [class members] participated in or contributed to the wrongful conduct" did not predominate).

*Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1114 (N.D. Cal. 2013). As Judge Chen noted in *Cannon*, 2013 WL 132450 at *9 where plaintiff does not challenge "a rate as excessive, but rather the manipulation of the rate, the filed rate doctrine does not apply." Second, the filed-rate doctrine is inapplicable because the rate that is approved is the rate charged by the insurer to the bank, *not* the amount that is passed through to the borrower. Third, the filed-rate defense only applies to insurance carriers and is not available to Defendants. *See Abels*, 678 F. Supp. 2d at 1277. Fourth, even if the doctrine applied, it would be a classwide issue, not one requiring any individualized proof or analysis. Finally, as shown, both California and Florida rejected Assurant's' rates as excessive, and "commissions" have been banned, matters which Defendants, perhaps not surprisingly, fail to mention.

**E. Individual Damages Calculations Do Not Bar Class Certification.**

    **1.    The *Ninth* Circuit in *Leyva* Clarified *Comcast*.**

    Defendants next argue that the need to calculate damages due each class member defeats class certification, based on an incorrect interpretation of *Comcast, Inc. v. Behrend*, 133 S. Ct. 1426 (2013). The Ninth Circuit addressed—and rejected—a similar argument in *Leyva v. Medline Ind.*, 716 F.3d 510, 514 (9th Cir., 2013). In *Leyva*, the Court made clear that "[i]n this circuit…damages calculations alone cannot defeat certification." *Id.* (citing *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). "[T]he Supreme Court clarified in *Dukes* that 'individualized monetary claims belong in Rule 23(b)(3).'" *Id.*[6] The *Comcast* Court held that "[c]alculations need not be exact, but at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case." 133 S. Ct. at 1433. Here, that is precisely the case.

---

[6]  *See In re High-Tech Employee Antitrust Litig.*, 2013 WL 1352016 (N.D. Cal. Apr. 5, 2013); *Munoz v. PHH Corp.*, 2013 WL 2146925 (E.D. Cal. May 15, 2013)("The *Comcast* decision does not infringe on the long-standing principle that individual class member damage calculations are permissible in a certified class under Rule 23(b)(3)").

**2.      Class Members' Damages Are Equal to Commissions and Administrative Costs Included in the Amounts Charged for FPI.**

Calculating damages is possible in this case because damages consist of a straight percentage of all FPI charges.  Defendants' contrary argument that "[a]n unpaid overcharge is not damage" is unavailing. Opp. at 17. Class Members incur legal obligations the moment that Defendants charge them for LPI because LPI charges are added to their loan balances. Adding unlawful charges to a mortgage, which the borrower is legally obligated to pay, constitutes an economic injury.[7] Unlawful charges are damages. In *Lane*, the court therefore concluded, "[e]ven if a borrower has been charged but has not yet paid for the expenses, the debt is an economic injury and lien upon his property sufficient to confer standing to assert a claim under the unfair competition law (charges for borrowers who have been excused from payment of their loan, and associated expenses, such as through foreclosure, are excluded from the class definition)." *Lane*, 2013 WL 3187410 at *9-11.  Similarly, in *Williams*, 280 F.R.D. at 675, the court certified a class of Florida residents who "were charged, and who either paid or who still owe, premiums for a force-placed insurance policy." *Williams*, 280 F.R.D. at 675.

Here, Defendants know full well from their computerized billing records and how much money they charged and collected for FPI from each borrower. The common Collection Agreement confirms that the same automated process was used by Servicing in each FPI transaction. (Ex. 18). The Agreement specifically confirms that "Billings" records (including "Payment Tape Reports") of premiums and commissions collected must be maintained. *Id.* ¶¶2-3, 10. Further, the Agency Agreement  confirms that the same 35% commission applies for all amounts collected.  (Ex. 13-16). Commission revenue is then reported on financial statements, including Defendants' parent's form 10-K. FAC ¶¶48-50. Therefore, the process of calculating the "commissions" retained by Servicing here consists of little more than

[7]  Cal. Civ. Code §3281 ("Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages.")

reviewing a function conducted in the ordinary course of Defendants' business each day. Courts in *Lane*, *Williams* and *Ellsworth*, therefore found that the need to calculate damages was not a barrier to certification, rejecting these same arguments.

### 3. Classwide Damage Models Have Been Accepted In Other Cases.

In several other cases, economist Birny Birnbaum has prepared expert reports showing that it is feasible to calculate classwide damages in case like this. *Lane,* at *9; *Williams,* at 670–71; *Ellsworth*, at *25; FAC ¶60. Should the Court find that a more detailed damage model would be helpful, a similar report can be provided.

## F. Defendants' Superiority Argument Is Really Just A Request That The Court Take A Pass On Holding It Accountable for The Violations Raised.

### 1. Class Actions Are The Superior Way To Resolve These Disputes.

Contrary to Defendants' arguments, courts have held that resolving disputes of cases such as this through a certified class action (single or multi-state) is the superior way to proceed. As noted in *Lane*: "Since the damage amounts allegedly owed to each individual defendant are relatively low—especially as compared to the costs of prosecuting the types of claims in this case involving complex, multi-level business transactions between sophisticated Defendants—the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits…As the Plaintiffs point out, even a large and complex class action lawsuit would be more manageable, from the Court's perspective, than being inundated with thousands of individual lawsuits with overlapping factual allegations and all involving the same proof to establish an identical illicit scheme against the same Defendants." 280 F.R.D. at 675. *See Ellsworth* at *29-31. The same holds true here.

Further, Defendants' argument that certifying a class in this district would be inconvenient for the Florida subclass is without merit. Courts in this circuit routinely certify multi-state classes. *See e.g.*, *Wolin v. Land Rover*, 619 F.3d 1168 (9th Cir. 2010)(certifying Michigan and Florida subclasses). The Northern District in *Ellsworth* experienced no difficulties certifying a California subclass with that of

another state (New Mexico). In that case the New Mexico class members did not need to travel to California and have had no problems monitoring the case through court-approved notices, updates from class counsel and the electronic Pacer system.[8]

## G. Plaintiffs Request That The Court Modify The Proposed Exclusions To The Class Definition.

Plaintiffs agree that a plaintiff must be a member of the Class she proposes to represent. That much is elementary. The purpose of the exclusions to the Class definitions was to exclude borrowers who had suffered no injury because they neither paid, nor had an obligation to pay, FPI commissions or kickbacks to Defendants. Admittedly, Plaintiffs' proposed exclusions are overly broad as they arguably exclude Plaintiff Longest who plainly was injured by the challenged practices. She paid the challenged FPI premiums and Servicing retained the common kickback from her payments. (Doc. 48) Only after paying those amounts and incurring injury did she enter into any loan modification agreement, which in no manner waived claims or resulted in a refund or cancellation of those charges. Thus, absent the poorly drafted exclusions, Longest is a member of the proposed Class as she was "charged, paid or still owe[s] premiums for a force-placed insurance policy." (Motion (Doc. 45), at 1.)

The issue with Plaintiff Longest's class membership is that the exclusions were unartfully worded to exclude whole groups of *persons* instead of *charges*. Plaintiffs agree with Judge Alsup's conclusions, in certifying a FPI class, that borrowers who have paid some charges should not be excluded from class membership:

> **Borrowers who were charged and did pay, however, should be able to seek damages or restitution, even if they are no longer obligated for charges going forward (where, for example, the subject property was eventually foreclosed upon).** To solve this difficulty, this order finds that defining the class to exclude recovered or

---

[8]   Defendants' suggestion that the court defer to the less-procedurally advanced *Circeo-Loudon v. Green Tree Servicing* case, where no class motion has yet been filed is misleading as their Answer reveals they oppose class certification there too.

> extinguished *charges* is appropriate (rather than excluding certain
> *persons*). This order recognizes that identifying the class members will
> entail some effort on the part of counsel for both parties; however, the
> information regarding which borrowers incurred and paid for force-
> placed insurance charges is ascertainable from Wells Fargo's records.

*Lane,* at *10. Given that Courts have the inherent power to define or redefine the class definition as appropriate,[9] Plaintiffs request that the Court cure the non-prejudicial error by modifying the proposed exclusions by striking-out Plaintiffs' initial list of excluded *persons* and replace them with Judge Alsup's excluded *charges* language (bolded) from *Lane*:

> Specifically excluded from both the California Class and Florida Class are: (a) any officers, directors or employees of Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; (e) any counsel of record for any party; ~~(f) any borrowers who have filed for bankruptcy; (g) any persons in whose transaction the lender has obtained a foreclosure judgment; (h) any persons who entered into a short-sale agreement involving the subject mortgage loan; (i) any persons who granted a deed in lieu of foreclosure involving the subject mortgage loan; (j) any person who entered into a loan modification involving the subject mortgage loan; (k) any person who paid in full or part after a property insurance claim; and/or, (l) any person whose force-placed insurance was canceled in full before any payment or debit.~~ **and/or "charges collected or extinguished through foreclosure, short-sale agreement, or grant of a deed in lieu of foreclosure or through cancellation or waiver by borrower's agreement with the lender."**

Motion (Doc. 45), at 3; *Lane*, at *16.

## H.   Mrs. Cai Is A Member of the Florida Subclass.

Defendants' half-hearted argument that Plaintiff Lifen "Regina" Cai is not a member of the class is without merit. Mrs. Cai is a party to the uniform Fannie Mae

---

[9] *Kingsbury v. U.S. Greenfiber, LLC,* 2011 WL 2619231, at *1, n. 3 (C.D. Cal. May 23, 2011) ("It is well within the court's authority to redefine Plaintiffs' proposed class. *See* Wright & Miller, Fed. Prac. & Proc. §1759 at 130–31 (2010) ("if plaintiff's definition of the class is found to be unacceptable, the court may construe the complaint or redefine the class to bring it within the scope of Rule 23.")."); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 590-91 (N.D. Cal. 2010) *am in part,* 2011 WL 3268649 (N.D. Cal. July 28, 2011) (denying motion to strike proposed modification to class definition where the redefinition was minor, required no discovery and caused no prejudice to defendants).

contract. (Doc. 50-1, at 1 (Mortgage noting "(B) 'BORROWER' IS JUNXIU CAI, AND LIFEN ZHANG, HUSBAND AND WIFE").)  In turn, Mrs. Cai paid the FPI premiums from her and her husband's joint funds and Defendants, in turn, retained a portion of those payments as kickbacks. L. Cai Tr., at 16; 22. Thus, she is "subject to a [uniform instrument]" and was "charged, paid or still owe[s] premiums for a force-placed insurance policy." (Doc. 45, at 2-3.) She has suffered an injury and is a member of the Florida Subclass.

I.    **Mr. Cai Is An Adequate Representative Who Presents Typical Claims.**

        Despite Defendants' characterizations, Mr. Cai is an intelligent, thoughtful and committed class representative.  Mr. Cai holds an MBA from CUNY and is a 25-year employee of the City of New York, currently working as a financial analyst.  J. Cai Tr., at 6.  Any confusion relating to defense counsel's questioning likely stems from the fact that his wife, who also holds an MBA, has primary responsibility for managing the family's finances. *See e.g., id.,* at 7-8 and 11. Such a familial division of labor does not render Mr. Cai inadequate or atypical–rather it reflects, if anything, some degree of normalcy. Nevertheless, Mr. Cai testified intelligently, confirming that: (1) he was aware that Defendants had force-placed insurance on he and his wife ("Green Tree forced us to pay."); (2) that the FPI charges were excessive and unjust being in the "thousands instead of the hundreds;" (3) he understood his obligation to maintain insurance but never authorized Defendants to abuse their position as the loan servicer and engage in profiteering ("It's [FPI] like almost four times as much obviously. It's unjust."); and, (4) he understood his duties as a class representative and the purpose of the class action ("Well, the force-placed insurance is one, and all these unprofessional communications and contacts is another. And I mean, my wife had this strong sustainability to continue to fight with them and try to get it resolved. A lot of people simply get tired of it, give up, and lose their properties. So the class action is basically to represent the best interest of all these people similar to ourselves."). *Id.*, at 31-32, 35-37, 38-39, 39-44, 52-53, and 55.

**J.    There Is No Reason to Exclude Persons Force-Placed With Flood or Wind Coverage From the Class as the Same Policies Apply.**

Defendants erroneously claim that the class should only include those who were force-placed with hazard coverage but not flood or wind coverage. This arguments should be rejected. Defendants offer no facts showing they had different policies based on the scope of coverage. Further, there is no need to amend the complaint: the class definition in the FAC encompasses all persons "who were charged or paid premiums for a force-placed insurance policy," without restriction to the scope of coverage. FAC ¶93. (Doc. 9) In such situations courts find that class representatives present sufficiently typical claims to represent classes covering all purchasers of a defendants' entire line of similarly-affected products.[10]

## III.    CONCLUSION

For all of the reasons stated, Plaintiffs request that the Court grant their motion.

ZIMMERMAN REED, PLLP

Dated: June 1, 2015            /s/ *Hart L. Robinovitch*
                                      HART L. ROBINOVITCH
                                      BRADLEY C. BUHROW
                                      14646 N. Kierland Blvd., Suite 145
                                      Scottsdale, AZ 85254
                                      (480) 348-6400 Telephone

                                      CHRISTOPHER P. RIDOUT
                                      CALEB MARKER
                                      HANNAH BELKNAP
                                      RIDOUT LYON + OTTOSON, LLP
                                      555 E. Ocean Blvd., Suite 500
                                      Long Beach, CA 90802
                                      (562) 216-7380 Telephone

                                      *Attorneys for Plaintiffs*

---

[10] *Beck-Ellman v. Kaz, USA, Inc.*, 283 F.R.D. 558, 564-65 (S.D. Cal. 2012)(plaintiff who purchased one model of line of products sharing common defect satisfied typicality); *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal. 2010)("The typicality requirement does not mandate that the products purchased, methods of purchase, or even damages of the named plaintiffs must be the same as those of absent class members."); *Koh v. S.C. Johnson & Son*, 2010 WL 94265, *3 (N.D. Cal. Jan. 6, 2010)("there is no brightline rule that different product lines cannot be covered by a single class."); *Percover v. Elec. Arts, Inc.*, 2101 WL 8742757 at *12 (N.D. Cal. 2010); *Donohue v. Apple, Inc.*, 871 F.Supp.2d 913, 922 (N.D. Cal. 2012); *Astiana v. Dreyers Grand Ice Cream*, 2012 WL 2990766, *11 (N.D. Cal. July 20, 2012); *Brown v. Hain Celestial Gp*, 913 F.Supp. 2d 881 (N.D. Cal. 2012).