**CIVIL MINUTES - GENERAL**           'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING  LLC ET AL. | | |

Present: The Honorable     CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS): AMENDED MOTION TO CERTIFY CLASS
(Dkt. 45, filed May 4, 2015)

## I.     INTRODUCTION

On November 6, 2014, plaintiffs Carlene Longest, Junxiu "Alex" Cai, and Lifen "Regina" Cai filed the operative first amended complaint ("FAC") against defendants Green Tree Servicing, LLC ("GT Servicing"), and Green Tree Insurance Agency, Inc. ("GT Insurance"), asserting claims on behalf of a proposed California class and a proposed Florida class.  Dkt. 9.  The FAC asserts the following claims under California law: (1) breach of contract, against GT Servicing; (2) breach of the implied covenant of good faith and fair dealing, against GT Servicing; (3) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., against both defendants; and (4) unjust enrichment, against GT Insurance.  Id.  The FAC also asserts the following claims under Florida law: (1) breach of contract, against GT Servicing; (2) breach of the implied covenant of good faith and fair dealing, against GT Servicing; and (3) unjust enrichment, against GT Insurance.  Id.  In brief, plaintiffs challenge defendants' practice of force-placing hazard insurance policies on their properties that were allegedly inflated by kickbacks paid to defendants by their exclusive insurer, Assurant.

On May 4, 2015, plaintiffs filed an amended motion for class certification.  Dkt. 45.[1]  Defendants opposed the motion on May 18, 2015, dkt. 81, and also filed evidentiary

---

[1] Although plaintiffs filed their original motion for class certification in January 2015, dkt. 21, the Court granted defendants' request to continue the hearing on plaintiffs' motion for sixty days, dkt. 30, and the parties subsequently stipulated to another continuance, as well as to plaintiffs' submission of an amended certification motion, dkt.

**CIVIL MINUTES - GENERAL**      '**O**'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

objections to plaintiffs' submission, dkt. 82. Plaintiffs filed a reply and responded to defendants' evidentiary objections on June 1, 2015. Dkts. 86, 87.[2] The Court held a hearing on June 15, 2015. Having carefully considered the parties' arguments, the Court

---

41.

    [2] Defendants raise various objections to evidence proffered by plaintiffs. First, defendants object on relevance and hearsay grounds to evidence of governmental actions against, and investigations into, players in the FPI industry—including various consent orders and a joint Federal Trade Commission (FTC)-Consumer Financial Protection Bureau (CFPB) complaint—as well as to news articles related to defendants' alleged conduct. Second, defendants object on relevance grounds to the consideration of documents and orders from a related force-placed insurance case. Finally, defendants object to portions of plaintiffs' motion for class certification on the basis that certain quoted portions misstate testimony. Because the court "makes no findings of fact and announces no ultimate conclusions" on a motion for class certification, "the Federal Rules of Evidence are not stringently applied" on such a motion. Keilholtz v. Lennox Hearth Prods. Inc., 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010) (quoting Fisher v. Ciba Specialty Chem. Corp., 238 F.R.D. 273, 279 (S.D. Ala. 2006)). Accordingly, the Court "may consider evidence that may not be admissible at trial." Id. Keeping this procedural posture in mind, the Court has reviewed defendants' objections and OVERRULES them to the extent the objected-to evidence is cited in this order. See Pedroza v. PetSmart, Inc., No. ED CV 11-298 GHK, 2013 WL 1490667, at *1 (C.D. Cal. Jan. 28, 2013) ("Unlike evidence presented at a summary judgment stage . . . evidence presented in support of class certification need not be admissible at trial. [Citations]. Accordingly, we need not rule on Defendant's specific evidentiary objections. However, to the extent that Defendant objects on grounds suitable for review at this stage, its objections are either moot because they do not go to evidence that formed the basis for this ruling, or are overruled."). Further, defendants' objections to consideration of documents and orders from a related FPI case are overruled for the additional reason that such documents are not in fact evidence; rather, they are the legal conclusions of another United States District Court and may have persuasive, if not precedential, value in the instant action.

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

finds and concludes as follows.[3]

## II.   BACKGROUND

        As a condition for funding home loans, lenders require borrowers to purchase and agree to maintain hazard insurance coverage on the secured property.  FAC ¶ 2.  If a borrower is unable to maintain such coverage, the lender or loan servicer will obtain a policy on the borrower's behalf.  Id. ¶ 3.  These policies are know as "force-placed" or "lender-placed" insurance (referred to herein as "FPI" and "LPI").  Id.  FPI policies provide less coverage than policies purchased by the borrower voluntarily, and are substantially more costly than such voluntary policies.  Id.

        Through this action, plaintiffs Carlene Longest, Junxiu Cai, and Lifen Cai (the "Cai plaintiffs") challenge certain practices involving FPI.  Specifically, plaintiffs allege that defendant GT Servicing, a residential mortgage loan servicer, and defendant GT Insurance, GT Servicing's affiliated insurance entity, "charg[e] residential borrowers for the 'cost' of procuring force-placed insurance from Assurant, Inc. ('Assurant') and its subsidiaries . . . but a portion of such 'cost' is returned, transferred, kicked-back or otherwise paid to [defendants]. [Defendants] do no meaningful work for the sums received, and therefore the payments amount to an unearned kickback designed to encourage the referral of business at extraordinary high prices."  Id. ¶ 1.  "Essentially, Assurant is engaging in a form of commercial bribery in order to induce [defendants] to purchase high-priced force-placed insurance policies, and have [defendants] refrain from seeking competitive bids in the market."  Id. ¶ 36.  Plaintiffs allege that the kickbacks received by defendants are passed along to the borrower in the form of inflated FPI costs, id. ¶ 42, which are typically added to the principal balance of the borrower's mortgage loan or debited from the borrower's tax and insurance escrow account, id. ¶ 44.

        Plaintiffs further allege that this kickback scheme is governed by several agreements entered into by defendants and Assurant.  Id.  ¶ 7; Robinovtich Decl., Ex. 1

---

        [3] Defendants filed an *ex parte* application for leave to file a sur-reply on June 8, 2015, dkt. 90, which plaintiffs opposed on June 9, 2015, dkt. 92.  The Court granted defendants' *ex parte* application on June 9, 2015.  Dkt. 93.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
| --- | --- | --- | --- |
| Title | CARLENE LONGEST V. GREEN TREE SERVICING  LLC ET AL. | | |

(Deposition of Andrew Jeska ("Jeska Depo. I")) at 217-218.  One of these agreements, the "Agency Agreement," provides that all FPI policies for loans serviced by defendants will be placed with Assurant or its affiliates.  See Robinovtich Decl., Exs. 13-16 (Agency Agreement).  Pursuant to the Agency Agreement, Assurant provides defendants a 35% commission for each FPI policy placed, purportedly for work performed by GT Insurance in connection with the force-placing of insurance.  See id.  Plaintiffs, however, allege that GT Insurance does not perform this work; instead, the purportedly earned commission is nothing more than a kickback, paid by Assurant to defendants in order to remain defendants' exclusive FPI policy provider.  Am. Mot. Cert. Class at 7-9.

In 2005, plaintiff Longest purchased real property located at 102 East Branch, Nipomo, California 93444 (the "California Property").  Id. ¶ 64.  To finance the purchase of the California Property, Longest executed a written thirty-year, adjustable rate mortgage with GMAC Mortgage Corporation on July 20, 2005 in the amount of $200,000.  Id. ¶ 65.  Longest's mortgage was memorialized on a Fannie Mae/Freddie Mac Uniform Instrument (Form 3010 dated 01/01).  Id. ¶ 66.  The mortgage includes a provision requiring Longest to maintain adequate property insurance to protect the California Property against loss by fire and other hazards, and also provides that the lender has the right to force-place insurance if Longest fails to secure such a voluntary policy or if Longest's voluntary policy lapses.  Id. ¶ 67.  Effective on or about February 1, 2013, GMAC Mortgage, LLC assigned, sold, or transferred all interest in Longest's mortgage to defendant GT Servicing.  Id. ¶ 68.  Between February 2013 and December 2013, Longest received several notices from defendants indicating that they had acquired FPI policies on her behalf and debited at least $1,406.20, in total, from Longest's mortgage payments.  Id. ¶¶ 69-74.

In 2007, the Cai plaintiffs purchased real property located at 105 Blue Jay Way, Davenport, Florida 33896 (the "Florida Property").  Id. ¶ 79.  To finance the purchase, the Cais executed a written thirty-year, fixed rate mortgage with Countrywide Home Loans, Inc., on May 22, 2007 in the amount of $184,000.  Id. ¶ 80.  Like Longest's mortgage, the Cais' mortgage was memorialized on a Fannie Mae/Freddie Mac Uniform Instrument (Form 3010 dated 01/01), id. ¶ 81, which contains identical provisions requiring the Cais to maintain adequate property insurance and providing the lender with the right to force-place such insurance in the event a voluntary policy lapses.  Id. ¶ 82.  Since 2012, the Cais allege that defendants have debited at least $4,809.39, in

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING  LLC ET AL. | | |

total, in FPI costs from their monthly mortgage payments.  Id. ¶ 83.

As stated above, the mortgages of both Longest and the Cai plaintiffs were memorialized on a Fannie Mae/Freddie Mac Uniform Instrument ("Uniform Instrument").  The Uniform Instrument contains the following clauses governing the lender's right to force-place insurance:

> **5. Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.

> \* \* \*

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  *Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.*  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**CIVIL MINUTES - GENERAL**      **'O'**

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
| --- | --- | --- | --- |
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, ... then *Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument*, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.

Robinovitch Decl., Ex. 36 (Fannie Mae/Freddie Mac Uniform Instrument for California) & Ex. 37 (Fannie Mae/Freddie Mac Uniform Instrument for Florida).

Plaintiff Longest seeks to represent the following California class:

California Class: All persons subject to a Single-Family, First Lien, Fannie Mae/Freddie Mac Security Instrument, owned or serviced by Green Tree Servicing, LLC on property located in California, who were charged, paid or still owe premiums for a force-placed insurance policy (hazard, flood and/or wind) during the Class Period.

The Cai plaintiffs seek to represent the following Florida class:

Florida Class: All persons subject to a Single-Family, First Lien, Fannie Mae/Freddie Mac Security Instrument, owned or serviced by Green Tree Servicing, LLC on property located in Florida, who were charged, paid or still owe premiums for a force-placed insurance policy (hazard, flood and/or wind) during the Class Period.

The "Class Period" for the California Class dates from October 14, 2010 and continues through the present and the date of judgment. The "Class Period" for the Florida Class dates from October 14, 2009 and continues through the present and the date of judgment.

Plaintiffs propose that the following persons be excluded from both the California Class and Florida Class:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

(a) any officers, directors or employees of Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; (e) any counsel of record for any party; (f) any borrowers who have filed for bankruptcy; (g) any persons in whose transaction the lender has obtained a foreclosure judgment; (h) any persons who entered into a short-sale agreement involving the subject mortgage loan; (i) any persons who granted a deed in lieu of foreclosure involving the subject mortgage loan; (j) any person who entered into a loan modification involving the subject mortgage loan; (k) any person who paid in full or part after a property insurance claim; and/or, (l) any person whose force-placed insurance was canceled in full before any payment or debit.[4]

## III.  LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis."  Haley v. Medtronic, Inc., 169 F.R.D. 643, 647

---

[4] As discussed in greater detail, infra, plaintiffs seek to modify the exclusions as follows:

Specifically excluded from both the California Class and Florida Class are: (a) any officers, directors or employees of Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; (e) any counsel of record for any party; **and/or charges collected or extinguished through foreclosure, short-sale agreement, or grant of a deed in lieu of foreclosure or through cancellation or waiver by borrower's agreement with the lender.**

Reply Mot. Cert. Class at 23 (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**           'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. |

(C.D. Cal. 1996) (citing <u>Crown, Cork & Seal Co. v. Parking</u>, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions. A class action "may be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." <u>Gen. Tel. Co. of the Southwest v. Falcon</u>, 457 U.S. 147, 161 (1982).

To certify a class action, plaintiffs must set forth facts that provide prima facie support for the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S.Ct. 2541, 2548 (2011); <u>Dunleavy v. Nadler (In re Mego Fir. Corp. Sec. Litig.)</u>, 213 F.3d 454, 462 (9th Cir. 2000). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." <u>Falcon</u>, 457 U.S. at 155 (quoting <u>Califano v. Yamasaki</u>, 442, U.S. 682, 701 (1979)).

If the Court finds that the action meets the prerequisites of Rule 23(a), the Court must then consider whether the class is maintainable under Rule 23(b). <u>Dukes</u>, 131 S.Ct. at 2548.

Rule 23(b)(3) governs cases where monetary relief is the predominant form of relief sought, as is the case here. A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1022 (9th Cir. 1998) (citing <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591 (1997)). The predominance inquiry measures the relative weight of the common to individualized claims. <u>Id.</u> "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1189 (9th Cir. 2001) (citing <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996)). In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. Id. at 1190–1993. "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Id. (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 at 535–39 (2d. 1986)).

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the rule—that is he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Dukes, 131 S.Ct. at 2551. This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id.

## IV. ANALYSIS

### A. Rule 23(a) Requirements

#### 1. Numerosity

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable. See Fed. R. Civ. P. 23(a)(1). "As a general rule . . . classes of 40 or more are numerous enough." Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988). "Where 'the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.' " In re Abbott Labs. Norvir Anti-Trust Litig., No. C 04-1511 CW, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007) (quoting 1 Alba Cone & Herbert B. Newberg, Newberg on Class Actions § 3.3 (4th ed. 2002)). Here, plaintiffs proffer defendants' interrogatory responses, in which they state that they force-placed more than 50,000 insurance policies on properties located in California and Florida throughout the class period. Robinovitch Decl., Exs. 6 & 7 (Interrogatory Responses). Accordingly, the Court finds the numerosity requirement satisfied.

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING  LLC ET AL. | | |

## 2.  Commonality

Under Rule 23(a)(2), plaintiffs must demonstrate that "there are questions of law or fact in common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . [and] [t]heir claims must depend upon a common contention . . . of such nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S.Ct. at 2551 (internal quotation marks and citations omitted).  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  Id.

The gravamen of plaintiffs' complaint is that defendants engaged in a common scheme to force-place insurance policies in a manner designed to maximize the kickbacks defendants received from their exclusive insurance provider, Assurant.  Plaintiffs thus assert that "each Class presents common issues regarding whether Defendants' kickback scheme was lawful, appropriate, and authorized under the Uniform Instruments."  Am. Mot. Cert. Class at 16.  Specifically, plaintiffs contend that the following questions can be resolved through the presentation of common, uniform evidence, generating answers for the named plaintiffs and class members alike:

- Does the kickback GT Servicing retains exceed the "cost of insurance" such that it breached its contract with borrowers?
- Did defendants breach the implied covenant of good faith and fair dealing as implied in all contracts by self-dealing in the manner described?
- Was defendants' conduct unfair under the UCL?
- To the extent it ever received the funds, is it unjust for GT Insurance to retain any commission conferred by borrowers' added debt obligation when it does nothing to earn it?

Id. at 16-17.

**CIVIL MINUTES - GENERAL**          '**O**'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|----------|------------------------|------|---------------|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

Defendants do not expressly contend that plaintiffs have failed to establish the existence of common issues of law and fact, instead opting to focus their opposition on plaintiffs' purported failure to establish the predominance of these common issues under Rule 23(b)(3). See Opp'n Class Cert. at 5-18. The Court addresses defendants' predominance arguments, including those concerning affirmative defenses, in the predominance section of this order, infra.

The Court concludes that plaintiffs have satisfied the commonality requirement. The Court does not write on a blank slate in reaching this conclusion. In certifying California and Florida state classes against loan servicers, lenders, and insurers based on nearly identical allegations, several courts have concluded that the answers to similar common questions are apt to "drive the resolution of the litigation." See, e.g., Ellsworth v. US. Bank, NA., No. C 12-02506 LB, 2014 WL 2734953, at *14 (N.D. Cal. June 13, 2014) (finding commonality satisfied where plaintiffs alleged "common scheme to force place insurance on borrowers in a way designed to increase kickbacks . . . from a captive insurance provider. . . ."); Lane v. Wells Fargo Bank, NA., No. C 12-04026 WHA, 2013 WL 3187410, at *8 (N.D. Cal. June 21, 2013) (same); Williams v. Wells Fargo Bank, NA., 280 F.R.D. 665, 672 (S.D. Fla 2012) (finding commonality satisfied since "[t]he determination of the truth or falsity of the Plaintiffs' allegations that [defendants] engaged in a scheme to force-place insurance with inflated and excessive premiums will resolve an issue that is central to the validity of each one of the claims in one stroke."). Because the crux of plaintiffs' allegations in the instant case is likewise that defendants orchestrated "a common scheme to systematically, and without any individual consideration, force-place insurance at an excessive rate to every person whose self-placed property insurance had lapsed," Williams, 280 F.R.D. at 672, proof of the existence of this scheme will generate common answers for all plaintiffs.

Accordingly, plaintiffs have satisfied the commonality requirement.

### 3.     Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [b] typical of the claims or defenses of the class." "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

class." Wolin v. Jaguar Land Rover North Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " Costco, 657 F.3d at 984 (quoting Hanlon, 976 F.3d at 508)). Thus, typicality is satisfied if the plaintiff's claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Additionally, where a class representative is subject to unique defenses, typicality may not be satisfied. Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

Defendants contest typicality on four grounds. First, defendants contend that plaintiffs' claims are atypical because plaintiffs' individualized theory of damages varies from the theory of damages plaintiffs seek to apply on behalf of the class. Opp'n Mot. Cert. Class at 23. Second, defendants assert that neither Mrs. Cai nor Longest are class members. Opp'n Mot. Cert. Class at 22. Third, defendants contend that Longest is subject to unique defenses. Id. at 23-24. And fourth, defendants argue that plaintiffs are only typical insofar as they seek to represent a class of borrowers for whom defendants force-placed *hazard* insurance, not flood or wind insurance. Id. at 24-25.

As to plaintiffs' allegedly individualized theory of damages, defendants assert that while the complaint proceeds upon the kickback theory, named plaintiffs' "claims are not that their premiums were too high because they included commissions or 'kickbacks' . . . but instead that they never should have had LPI at all." Opp'n Mot. Cert. Class at 23. In support, defendants point to plaintiffs' interrogatory responses, in which plaintiffs state that they believe they are entitled to a refund of the entirety of the monthly FPI premiums, rather than the portion that allegedly constitutes a kickback. Id. (citing Kemp. Decl., Exs. G & H). Defendants' argument misses the mark. At bottom, plaintiffs are typical if they possess the same injury as the class they seek to represent and were injured by the same course of conduct. Neither plaintiffs' interrogatory responses, nor certain deposition testimony pointed to by defendants, negate the fact that named plaintiffs allege they, like absent class members, were injured when defendants imposed kickback-inflated FPI policies on their properties pursuant to a uniform scheme.

Next, defendants assert that neither Mrs. Cai nor Longest are class members. As to

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING  LLC ET AL. | | |

Mrs. Cai, plaintiffs' proposed Florida class definition encompasses all persons "subject to" a Uniform Instrument owned or serviced by GT Servicing, who were "charged, paid or still owe premiums" for FPI polices.  Defendants contend that Mrs. Cai is not "subject to" any loan owned or secured by GT Servicing, because she signed only the Uniform Instrument securing Mr. Cai's loan, but not the underlying promissory note.  Opp'n Mot. Cert. Class at 22.  In support, defendants point to the following language in the Uniform Instrument:

> **13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.  However, any Borrower who co-signs this Security Instrument but does not execute the Note . . . (b) is not personally obligated to pay the sums secured by this Security Instrument[.]

L. Cai Decl., Ex A (Cais' Uniform Instrument).  In response, plaintiffs do not address the foregoing language, instead asserting that Mrs. Cai's status as a signatory to the Uniform Instrument, coupled with the fact that she paid FPI premiums "from her husband's joint funds" renders her "subject to" the Uniform Instrument within the meaning of the proposed class definition.  Reply Mot. Cert. Class at 23-34.

The Court concludes that Mrs. Cai is not "subject to" the Uniform Instrument and is therefore not a class member.  Under Florida law, mortgages are construed in accordance with traditional rules of contract interpretation.  Sims v. New Falls Corp., 37 So.3d 358, 361 (Fla. Dist. Ct. App. 2010).  Thus, "[a]bsent an ambiguity, the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls."  Gibney v. Pillifant, 32 So. 3d 784, 785 (Fla. Dist. Ct. App. 2010) (internal quotations omitted).  Following this rule of construction, the plain language of paragraph 13 of the Uniform Instrument demonstrates that Mrs. Cai, who did not execute the accompanying promissory note, is not personally obligated for the debt secured thereunder.[5]

_____

[5] Moreover, Florida law requires equitable distribution of marital assets and liabilities upon divorce.  Fla. Stat. Ann. § 61.075.  "Pursuant to section 61.075(3)(c) . . .

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|----------|------------------------|------|---------------|
| Title    | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

Defendants further assert that Longest, who entered into a loan modification with GT Servicing, is not a member of the class because plaintiffs' proposed class definition expressly excludes "any person who entered into a loan modification involving the subject mortgage loan." Opp'n Mot. Cert. Class at 22. As discussed in greater detail infra, plaintiffs propose to modify the class definition such that Longest is no longer excluded—a proposal that this Court is inclined to adopt, pursuant to certain conditions set forth infra. Defendants' arguments regarding Longest's class membership are therefore moot.

Defendants also contend that Longest is atypical because she is subject to unique defenses. Id. at 22. Specifically, defendants contend that Longest is susceptible to defenses such as waiver and the voluntary payment doctrine, since Longest "did not obtain her own hazard insurance until February 2015 . . . and inexplicably remains in flood LPI today." Id. at 23. To the extent that Longest is subject to such affirmative defenses, which are discussed in greater detail infra, defendants themselves argue that such defenses are applicable to a wide-range of class members. See e.g., id. at 14 ("Waiver, in particular, will be a significant issue at trial since many borrowers paid for LPI despite being notified of its disadvantages."). It follows that Longest is in fact typical of the class she seeks to represent. More to the point, however, the issue in this case is whether the inflated cost of the insurance force-placed by defendants were caused by undisclosed kickback arrangements—not whether any individual plaintiff voluntarily paid kickback-inflated premiums or otherwise acquiesced in defendants' alleged kickback scheme. See Ellsworth, 2014 WL 2734953, at *17 (concluding that failure to mitigate "is

---

the trial court is required to determine whether a debt is marital, and if it is, to apportion the marital liability." Williams v. Williams, 904 So.2d 488 (Fla. Dist. Ct. App. 2005). Florida courts consider myriad factors in making this determination. Fla. Stat. Ann. § 61.075(1)(a)-(j). Because determining whether Mrs. Cai—and individuals similarly situated to Mrs. Cai—are class members would require the application of a many-factored test, inclusion of such individuals in the class definition would also render the class unascertainable. See infra (discussing requirement that class be ascertainable by reference to objective criteria).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

not a defense that poses the kind of danger that defeats typicality[,]" since "[w]hat is at issue here is whether [defendant] appropriately force-placed backdated insurance and the relatively higher LPFI charges caused by [defendants'] undisclosed kickback arrangements.").

Lastly, defendants contend that plaintiffs are only typical of the proposed class insofar as they seek to represent a class of borrowers subject to force-placed *hazard* insurance, rather than wind or flood insurance. Opp'n Mot. Cert. Class at 25. Defendants note that plaintiffs' allegations are specifically tied to force-placed hazard insurance, see FAC ¶¶ 1-3, 5, 8, that the Cais were never charged for flood or wind FPI, and that Longest, who was charged for both hazard and flood LPI, "acquiesced" to the flood LPI. Plaintiffs counter that the FAC "encompasses all persons 'who were charged or paid premiums for a force-placed insurance policy,' without restriction to the scope of coverage," Reply Mot. Cert. Class (quoting FAC ¶93), and assert that "[d]efendants offer no facts showing they had different policies based on the scope of coverage," id.

Plaintiffs reverse the burden on a motion for class certification. As the Supreme Court explained in Dukes, the "party seeking class certification must affirmatively demonstrate his compliance with the Rule." 131 S. Ct. at 2551. Here, it appears to the Court that plaintiffs have prosecuted this action against defendants for the force-placement of hazard insurance, not wind and flood. Indeed, paragraph one of the FAC provides that "plaintiffs and Class members allege that Defendants derive improper financial benefits by imposing force-placed *hazard* insurance policies on properties." FAC ¶ 1 (emphasis added). Because defendants force-placed hazard insurance on named plaintiffs' properties, plaintiffs may represent classes comprised of borrowers who likewise were subject to hazard FPI—but not flood or wind FPI. See, e.g., Lane, 2013 WL 3187410, at *7 (finding plaintiff, for whom defendants force-placed flood insurance, was not typical of borrowers for whom defendants force-placed hazard insurance).

Accordingly, the Court concludes that Mr. Cai and Longest satisfy the typicality requirement, but that Mrs. Cai is not typical of the proposed Florida class.

**4. Adequacy**

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

Under Rule 23(a)(4), a named plaintiff must "fairly and adequately protect the interests of the class." To establish adequacy of representation, the issue is whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class." Hanlon, 150 F.3d at 1020.

Defendants contend that plaintiffs Longest and Mrs. Cai are inadequate "just as they are atypical, because Longest and Mrs. Cai are not class members and [lack] standing to assert the class claims." Opp'n Mot. Cert. Class at 24. For the reasons discussed above with regard to typicality, the Court agrees that Mrs. Cai is not an adequate representative, but concludes that Longest is adequate.

As to Mr. Cai, defendants contend that he is an inadequate representative because he "does not even know what LPI is," and has generally demonstrated insufficient knowledge of his claims. Id. at 24. Defendants point to portions of Mr. Cai's deposition where he testified that he believed he was representing individuals with "[s]imilar interests, like, being the victim of force-placed insurance or, you know, the harassments, foreclosure of the properties," Kemp Decl. Ex. C (J. Cai Depo. at 54:4-7), and explained that he had limited knowledge of defendants' alleged misconduct because his wife, Mrs. Cai, possessed primary responsibility for financial matters in the marriage, id. at 24:1-27:15. Defendants' adequacy arguments miss the mark.

At bottom, defendants contend that plaintiffs' counsel, rather than plaintiffs themselves, are driving this lawsuit. However, "Rule 23 should not be used to defeat the ends of justice by facilitating the dismissal of class action complaints involving unsophisticated named plaintiffs." Buus v. WAMU Pension Plan, 251 F.R.D. 578, 587 (W.D. Wash. 2008); Rankin v. Rots, 220 F.R.D. 511, 521 (E.D. Mich. 2004). Moreover, "[i]t would be unfair to deny someone . . . access to our courts merely because he is unable to articulately respond to questions from attorneys." Parrish v. Nat'l Football League Players Ass'n, No. C 07-00943 WHA, 2008 WL 1925208, at *7 (N.D. Cal. Apr. 29, 2008) (finding class representative adequate who "repeatedly gave conflicting and peculiar answers in response to questioning relating to this suit."). Here, Mr. Cai has responded to discovery requests and, even if he has grievances with defendants' alleged practices beyond those addressed in this lawsuit, Mr. Cai's deposition testimony indicates

**CIVIL MINUTES - GENERAL**     **'O'**

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|----------|------------------------|------|---------------|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

his basic understanding of the force-placed insurance practices challenged here. Because defendants proffer no evidence demonstrating that Mr. Cai has a conflict of interest with other class members or is otherwise inadequate to act on the class' behalf, the Court finds that Mr. Cai is an adequate class representative.

Accordingly, the Court finds that Mr. Cai and Longest are adequate class representatives, but that Mrs. Cai is not adequate.

### C.     Rule 23(b)(3) Requirements

Having concluded that the Rule 23(a) requirements are met, the Court turns to Rule 23(b). Under Rule 23(b)(3), class certification is appropriate "if Rule 23(a) is satisfied" and if "the court finds that [1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and that [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162–63 (9th Cir. 2001).

### a.     Predominance

The predominance inquiry "trains on legal or factual questions that qualify each class member's case as a genuine controversy." Amchem Prods, Inc. v. Windsor, 521 U.S. 591, 625 (1997). Although the predominance inquiry involves consideration of the same principles that guide the Rule 23(a) commonality analysis, it "is even more demanding than Rule 23(a)." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013). "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." Hanlon, 150 F.3d at 1022. "When one or more of the central issues in the action are common to the class and can be said to predominate," a class action will be considered proper "even though other matters will have to be tried separately." Gartin v. S&M NuTec LLC, 245 F.R.D. 429, 435 (C.D. Cal. 2007).

"Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved." Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 489 (E.D. Cal. 2006). "Implicit in the

**CIVIL MINUTES - GENERAL**       **'O'**

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|----------|------------------------|------|---------------|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2184 (2011).

Plaintiffs seek to certify a California class asserting four claims for relief, as well as a Florida class asserting three claims for relief. Defendants contend that individualized issues predominate as to all of these claims, as well as to various affirmative defenses. Defendants also contend that individualized issues concerning damages defeat predominance.

### (i)    Liability

Plaintiff Longest seeks to represent a class of California borrowers asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of the UCL, and the Cai plaintiffs seek to represent a class of Florida plaintiffs asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.

As discussed in connection with commonality, plaintiffs possess identical mortgage instruments and allege that defendants engaged in a common scheme to force-place insurance policies on borrowers' properties—policies that were uniformly inflated by kickbacks allegedly generated pursuant to five key agreements governing defendants' relationship with its exclusive insurer, Assurant. Several courts in this circuit and elsewhere have concluded that similar allegations suffice to establish predominance. See, e.g., Lane, 2013 WL 3187410, at *8 (certifying California class asserting breach of Fannie Mae/Freddie Mac and FHA form contracts by taking kickbacks in connection with FPI); Williams, 380 F.R.D. at 675-76 (certifying Florida class on claims of unjust enrichment and breach of the covenant of good faith and fair dealing related to inflated charges and unlawful commissions/kickbacks on FPI); Hofstetter v. Chase Home Fin., LLC, No. C 10-01313 WHA, 2011 WL 1225900, at *8, 11 (N.D. Cal. Mar. 31, 2011) (certifying national TILA class and California UCL class based on theory of inflated charges and alleged kickbacks to bank in connection with FPI). As one such court

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

explained: "The challenged practices are the same, the insurer [Assurant] is the same, and the legal issues generally are the same: were the practices lawful under the standard mortgage contract or under state laws regarding the implied covenant of good faith and fair dealing, unjust enrichment, or unfair competition." Ellsworth. 2014 WL 2734953, at *19 (certifying California and New Mexico FPI classes). For the reasons that follow, the Court agrees with the conclusions of these sister courts.

## 1.    Breach of Contract

Under California and Florida law, a claim for breach of contract requires proof of (1) the existence of a contract; (2) plaintiff's performance under the contract or excuse for nonperformance; (3) defendant's breach; and (4) resulting damage. Vaccarino v. Midland Nat. Life Ins., Co., No. CV 11-05858 CAS MANX, 2011 WL 5593883, at *7 (C.D. Cal. Nov. 14, 2011) (citing Wall St. Network, Ltd. v. N.Y. Times Co., 164 Cal. App. 4th 1171, 1178 (2008)); Geter v. Galardi S. Enterprises, Inc., 43 F. Supp. 3d 1322, 1328 (S.D. Fla. Aug. 29, 2014) (quoting Int'l Star Registry of Ill. v. Omnipoint Mktg., LLC, 510 F. Supp. 2d 1015, 1022 (S.D. Fla.2007) (internal quotations omitted)); Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006). Florida law adds the requirement that the defendant's breach be material. Geter, 43 F. Supp. 3d at 1328.

Although courts routinely certify class actions involving breaches of form contracts, such as the Uniform Instrument at issue here, Ellsworth, 2014 WL 2734953, at *20 (collecting cases), defendants contend that the instant case merits a different outcome. First, defendants contend that construction of the terms of the Uniform Instrument—particularly the term "cost of insurance"—will necessitate individualized inquiries, relying on Rapp v. Green Tree Servicing, LLC, 302 F.RD. 505 (D. Minn. 2014). In Rapp, the court declined to certify a nationwide class of borrowers asserting claims for breach of contract and unjust enrichment against the instant defendants, largely due to variations in relevant laws across the fifty states. See, e.g., id. at 302 F.R.D. at 511 ("[U]sing subclasses to accommodate the differences among statutes of limitations is not as simple as [plaintiff] suggests."). However, the Rapp court also reasoned that "[t]here is no reason to think that 'the cost of the insurance' [for plaintiff] will be the same as 'the cost of the insurance' for every other class member[,] . . . [since] the 'true' cost of the force-placed insurance in each case might depend on the location of the property, the

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|----------|------------------------|------|---------------|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING  LLC ET AL. | | |

value of the property, the personal characteristics of the borrower, the circumstances of the insurance market at the particular time and in the particular location, and countless other variables." Id. at 510.

In advancing the foregoing argument, defendants fundamentally misconstrue plaintiffs' claims.  Plaintiffs challenge a uniform practice through which defendants purported to charge borrowers solely for the "cost of insurance," but actually charged borrowers for "a common 35% kickback component" subsumed within that "cost of insurance" charge.  Determining whether the term "cost of insurance" contemplates inclusion of such a kickback component is in no way dependent upon the unique underwriting criteria for insuring any single property.[6]

Citing Gustafson v. BAC Home Loans Servicing, LP, 294 F.R.D. 529 (C.D. Cal. 2013), defendants next contend that common issues do not predominate because construction of the terms "reasonable or appropriate" may require the introduction of extrinsic evidence.  This argument is without merit.  In Gustafson, the court declined to certify a *nationwide* class for breach of contract, in part because plaintiffs did not "propose a plan to manage differences among states' laws regarding the use of extrinsic evidence."  294 F.R.D. at 544, 547.  Here, in contrast, the Court need not reconcile variable state laws concerning extrinsic evidence—California law will apply to the California class, and Florida law will apply to the Florida class.  See also Ellsworth, 2014 WL 2734953, at *23 ("It is not obvious that extrinsic evidence will be introduced at all, and at best . . .  it would be non-individualized extrinsic evidence.").

Third, defendants contend that proof of class members' performance is not subject to common proof.  Defendants assert that a plaintiff's failure to maintain hazard insurance may defeat performance, and that "many borrowers have breached their

------

[6] Interestingly, defendants contend that interpreting the phrase "cost of insurance" would require the trier of fact "to individually underwrite each borrower's policy," Opp'n Mot. Dismiss at 1, while simultaneously acknowledging that FPI "is not individually underwritten," id. at 3.  Thus, despite the arguments advanced by defendants in the instant motion, defendants' course of conduct indicates that they construed the term "cost of insurance" as being untethered to individual underwriting considerations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

contracts in other ways beyond the failure to maintain insurance." Opp'n Mot. Cert. Class at 7. As this Court explained in its February 9, 2015 order denying defendants' motion to dismiss the FAC, a defendant who continues to perform under a contract despite the other party's breach—be it material or otherwise—has waived the right to complain of that breach. Dkt. 32 at 9 (citing <u>Williston on Contracts</u> § 39:31 (4th ed.); <u>Persaud v. Bank of Am., N.A.</u>, No. 14-21819 CIV, 2014 WL 4260853, at *8 (S.D. Fla. Aug. 28, 2014); <u>Hamilton v. Suntrust Mortg. Inc.</u>, 6 F. Supp. 3d 1300, 1309 (S.D. Fla. Mar. 25, 2014)). Here, defendants continued to perform under borrowers' contracts by maintaining FPI policies. Accordingly, plaintiffs need not proffer evidence of class members' performance, or lack thereof, and thus any concerns over the individualized nature of such evidence are of no moment.[7]

Lastly, defendants also contend that variances in "contract formation and loan origination issues" defeat predominance. Opp'n Mot. Cert. Class at 8. Specifically, defendants assert that because they sent varied disclosures to borrowers disclosing, for example, that FPI might be more expensive than voluntary insurance, plaintiffs will be unable to prove by common evidence whether their claims are barred by defendants' "full disclosure of LPI's features." <u>Id.</u> at 9.

Defendants' disclosure arguments are without merit. As the <u>Williams</u> court persuasively explained in certifying a Florida class of borrowers subject to FPI:

[Defendant] argues that [plaintiff's] mortgage warns him that the cost of force-placed insurance may significantly exceed the cost of self-placed

---

[7] Moreover, although defendants contend that the <u>Rapp</u> court held that determining whether any of plaintiffs' prior breaches "are material and bar the claims asserted here 'would require an analysis of the facts of each case ....' " Opp'n Mot. Cert. Class at 7 (quoting 302 F.R.D. at 512), the <u>Rapp</u> court did *not* so hold. Rather, in the context of a motion to certify a *nationwide* breach of contract class, the <u>Rapp</u> court concluded that "[w]hether this first-material-breach doctrine applies—and whether any particular class member's breach of the mortgage was "material"—would require an analysis of the facts of each case *and the law of each of the 50 states.*" 302 F.R.D. at 512 (emphasis added).

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

insurance. [Defendant] does not, however, argue that [plaintiff], or any potential class member, was forewarned that force-placed insurance may be unjustly excessive and artificially inflated as a result of [defendants'] deceptive practices. As the Plaintiffs have articulated, "[i]t is not the amount of the premiums that Plaintiffs challenge; it is what was included in those amounts after the premiums had been manipulated by [Defendants'] force-placed scheme."

280 F.R.D. at 674 (internal citation omitted); see also Ellsworth, 2014 WL 2734953, at *28 ("To the extent that [defendant] argues that disclosures to borrowers vary, any differences do not defeat predominance because the disclosures do not reveal kickbacks or backdating.").

Accordingly, the Court concludes that common issues predominate as to liability on the claims for breach of contract.

## 2.     Breach of the Implied Covenant

Both California and Florida courts recognize an implied covenant of good faith and fair dealing in every contract. See Susilo v. Wells Fargo Bank, N.A., 796 F. Supp. 2d 1177, 1188 (C.D. Cal. 2011) (citing Price v. Wells Fargo Bank, 213 Cal. App. 3d 465, 478 (1989)); Abels v. JPMorgan Chase Bank, N.A., 678 F. Supp. 2d 1273, 1278 (S.D. Fla. 2009) (quoting Centurion Air Cargo v. UPS Co., 420 F.3d 1146, 1151–52 (11th Cir. 2005)). Although the implied covenant cannot vary the express terms of a contract, the failure to perform a discretionary act in good faith may be a breach of the implied covenant. Abels, 678 F. Supp. 2d at 1278. Thus, "where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." McNeary-Calloway v. JP Morgan Chase Bank, N.A., 863 F. Supp. 2d 928, 956 (N.D. Cal. 2012) (quoting Perdue v. Crocker Nat'l Bank, 38 Cal. 3d 913, 923 (1985)). See also Abels, 678 F. Supp. 2d at 1278 ("[W]here the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

to act capriciously to contravene the reasonable contractual expectations of the other party.").

Defendants contend that individualized issues predominate because breach of the implied covenant requires proof of the contracting parties' reasonable expectations, necessitating inquiry into the state of mind of each borrower. Opp'n Mot. Cert. Class at 9. Not so. As the <u>Ellsworth</u> court explained in certifying California and New Mexico classes challenging FPI,

> [T]he duty of good faith and reasonableness is rooted in form contracts and the application of uniform policies to the rights and obligations under those contracts. The duty does not require examining each plaintiff's individual expectations because those . . . are reflected in the contract. At best, the issue is [defendants'] conduct and reasonableness, and any issues there do not defeat the common issues.

2014 WL 2734953, at *27; <u>see also</u> <u>In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.</u>, 270 F.R.D. 521, 530 (N.D. Cal. 2010) ("[P]laintiffs' breach of contract claim will not be proved based on each policyholder's understanding of the terms of the policies, but based on the face of the policy documents themselves.").

As to Florida law, defendants direct the Court to <u>Kunzelmann v. Wells Fargo Bank, N.A.</u>, No. 9:110-CV-81373DMM, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013) (denying certification of a Florida class asserting claims for breach of the implied covenant in connection with FPI). While acknowledging that the Eleventh Circuit has not addressed class certification of a claim for violation of Florida's implied covenant, the <u>Kunzelmann</u> court extrapolated from Florida state court cases "the requirement of a fact intensive inquiry" into the "parties' reasonable commercial expectations." <u>Id.</u> at *9. The <u>Kunzelmann</u> court thus concluded that the "need to examine the state of mind of each borrower, including awareness, expectations, and conduct requires individualized scrutiny incompatible with class treatment." <u>Id.</u> at *10.

A case relied upon by <u>Kuzelmann</u>, however, undermines that court's conclusion that a claim for breach of the implied covenant requires inquiry into the subjective

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

expectations of borrowers.  In <u>Publix Super Markets, Inc. v. Wilder Corp. of Del.</u>, 876 So. 2d 652 (Fla. Dist. Ct. App. 2004), the Florida District Court of Appeal considered whether the defendant, a party to a reciprocal easement agreement, breached that agreement by failing to exercise discretion conferred thereunder in good faith. Acknowledging that "the implied covenant of good faith protects contracting parties' reasonable commercial expectations," the court explained that "[u]nless *no reasonable party in the position of [defendant]* would have made the same discretionary decision [defendant] made, it seems unlikely that its decision would violate the covenant of good faith."  876 So. 2d at 655 (emphasis added).  Likewise, the uniform inquiry in the instant case is "whether a reasonable party in defendants' position would have made the same discretionary decision to force-place insurance policies (allegedly) inflated by kickbacks."

Moreover, where, as here, the parties' relationships are governed by uniform contracts that were not the subject of negotiation, courts applying Florida law have found such claims susceptible to classwide proof.  <u>See, e.g.</u>, <u>Williams</u>, 280 F.R.D. at 671 (certifying Florida class of borrowers in FPI case for breach of covenant of good faith and fair dealing); <u>Gibbs Properties Corp. v. CIGNA Corp.</u>, 196 F.R.D. 430, 441 (M.D. Fla. 2000) (denying certification on other grounds but concluding that whether insurer's uniform practice of improperly inflating insurance premiums breached the covenant of good faith and fair dealing "is susceptible to class-wide proof").  <u>See also</u> <u>Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.</u>, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.").

Finally, defendants once again direct the Court to <u>Gustafson</u>, as well as to <u>Gordon v. Chase Home Finance, LLC</u>, No. 8:11-CV-2001-T-33EAJ, 2013 WL 436445 (M.D. Fla. 2013), this time for the proposition that courts "have repeatedly denied certification of implied covenant claims."  Opp'n Mot. Cert. Class at 10.  Again, defendants' reliance on <u>Gustafson</u> is misplaced, since that court declined to certify a *nationwide* class asserting implied covenant claims governed by "nearly 3,000 mortgage templates with differing applicable provisions."  294 F.R.D. at 547.  The <u>Gordon</u> court likewise declined to certify a nationwide class on the implied covenant since class members possessed "divergent mortgage contracts."  2013 WL 436445, at *9.  Here, plaintiffs have confined the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|----------|------------------------|------|---------------|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING  LLC ET AL. | | |

proposed classes to individuals subject to "a Single-Family, First Lien, Fannie Mae/Freddie Mac Security Instrument."

In light of the foregoing, the Court concludes that common questions predominate as to liability on plaintiffs' claims for breach of the implied covenant of good faith and fair dealing.

### 3.     Unjust Enrichment

"Under the law of restitution [in California], an individual may be required to make restitution if he is unjustly enriched at the expense of another." Ghirardo v. Antonioli, 14 Cal. 4th 39, 51, 57 (1996).  "A person is enriched if he receives a benefit at another's expense." Id.  However, "[e]ven when a person has received a benefit from another, he is required to make restitution only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." Id. (internal quotation marks and citation omitted).  Under Florida law, "[t]he essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value there." Rollins, 951 So. 2d at 876.

Defendants contend that "proving injustice would be a predominant individual inquiry." Opp'n Mot. Cert. Class at 10.  For example, defendants argue that their receipt of a commission would not be unjust if the borrower was unable to obtain voluntary insurance on their own, acquiesced in defendants' purchase of FPI, or would have paid a higher rate for insurance if their property had been individually underwritten. Id. at 10-11.

Defendants' arguments are unpersuasive, since they do not address plaintiffs' theory of the case.  Plaintiffs do not allege that the mere placement of an FPI policy amounts to an injustice.  Rather, "the question is whether it was unjust for Defendants to arrange for a 35% rebate of each FPI premium to be kicked back from Assurant as an incentive for the referral . . . while at the same time contracting back all of the listed

**CIVIL MINUTES - GENERAL**       **'O'**

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|----------|------------------------|------|---------------|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING  LLC ET AL. | | |

'services' that support the 'commission' for Assurant to perform for a fraction of the cost." Reply Mot. Cert. Class at 16-17.  As explained by the Ellsworth court in certifying a California class for claims of unjust enrichment, "the case remains about the reasonableness of the kickbacks . . . , not choices that buyers make to take an easy insurance option."  2014 WL 2734953, at *28; accord Williams, 280 F.R.D. at 674-75 (certifying Florida class asserting unjust enrichment claim and rejecting arguments that individual borrowers' understanding of FPI and choices related thereto are relevant to proof of such a claim).

The Court thus concludes that common issues predominate as to liability on plaintiffs' unjust enrichment claims.[8]

---

[8] Further, the Court reaffirms its prior conclusion that the direct benefit doctrine does not bar Florida plaintiffs' claim.  Dkt. 32 at 15.  To state a claim for unjust enrichment under Florida law, plaintiffs must allege that they conferred a direct benefit on defendants.  Ruck Bros. Brick, Inc. v. Kellogg & Kimsey, Inc., 668 So.2d 205, 207 (Fla. Dist. Ct. App. 1995).  In denying certification of a nationwide unjust enrichment class, the Kunzelmann court agreed with defendants' contention that the direct benefit doctrine, as set forth in Virgilio v. Ryland Group, 680 F.3d 1329 (11th Cir.2012), posed a "hurdle" to plaintiffs' claim.  2013 WL 139913, at *5-6.

In Virgilio, individuals who purchased houses from a developer sued the developer, as well as affiliated entities responsible for marketing the housing development ("marketing defendants"), upon public disclosure that their homes were adjacent to a former bombing range, significantly reducing their value.  680 F.3d at 1331. The plaintiffs argued that it would be inequitable for the marketing defendants to retain commissions they had been paid by the developer, since the commissions were based on a percentage of the moneys paid by plaintiffs to the developer upon closing.  As such, plaintiffs contended that the developer was "merely a pass-through conduit required to deliver" the fee to marketing defendants.  Id. at 1337.  The Eleventh Circuit rejected this argument, suggesting that the developer's payment to the marketing defendants was merely incidental to the developer's relationship with plaintiffs, and as such, the benefit was conferred on the marketing defendants only by the party in contractual privity—i.e.,

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

## 4. UCL

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The statute is phrased in the "disjunctive," and, as a result, is violated where a defendant's act or practice is unlawful, unfair, *or* fraudulent. Prata v. Super. Ct., 91 Cal. App. 4th 1128, 1137 (2001). To determine whether a business practice is unfair to consumers, California courts apply a balancing test. Pursuant to that test, "the determination of whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court . . . weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victims."

---

the developer. Id. ("The mere fact that [developer] bargained away its right to 1.5 percent of the purchase price of Plaintiffs' houses did not change the fact that [developer], not Plaintiffs, conferred the benefit on [marketing] Defendants.").

Here, in contrast, the purported kickbacks were ultimately added to the principal balance of borrowers' mortgage loan or debited from borrowers' tax and insurance escrow accounts, even if the kickbacks were paid to defendants by Assurant in the first instance. See Aceto Corp. v. TherapeuticsMD, Inc., 953 F. Supp. 2d 1269, 1288 (S.D. Fla. 2013) ("There are several recent cases in this district that permit an unjust enrichment claim to stand where the benefit is conferred through an intermediary, pointing out that direct *contact*, or privity, is not the equivalent of conferring a direct *benefit*.") (emphasis in original). Other courts confronted with FPI cases have likewise concluded that Virgilio does not bar borrowers' unjust enrichment claims. See, e.g., Montoya v. PNC Bank, N.A., No. 14–20474–CIV, 2014 WL 4248208, at *13 (S.D. Fla. Aug. 27, 2014) (distinguishing Virgilio on the grounds that the Montoya plaintiffs sought to recover FPI premiums deducted directly from their escrow accounts, while in Virgilio the plaintiffs focused on money paid under an entirely separate services contract); Hamilton v. SunTrust Mortg., Inc., 6 F. Supp. 3d 1312, 1317-18 (S.D. Fla. Mar. 28, 2014) (distinguishing Virgilio on similar grounds); Faili v. BAC Home Loans Servicing LP, 2014 WL 255704, at *13 (C.D. Cal. Jan. 23, 2014) (same); Holmes v. Bank of Am., N.A., 2013 WL 2317722, at *6 (W.D.N.C. May 28, 2013) (same).

**CIVIL MINUTES - GENERAL**      **'O'**

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

Wahl v. Am. Sec. Ins. Co., No. C 08-00555 RS, 2010 WL 1881126, at *5 (N.D. Cal. May 10, 2010) (quoting Motors, Inc. v. TimesMirror Co., 102 Cal. App. 3d 735, 740, 162 Cal. Rptr. 543 (1980)).

Defendants contend that individual issues predominate on plaintiffs' UCL claim because the Court must determine borrowers' individual expectations about the premiums they were charged. Opp'n Mot. Cert. Class at 12. According to defendants, "[a]s the disclosures provided to borrowers . . . varied, plaintiffs could not show by common evidence which disclosures were made to each class member or their expectations about LPI." Id. at 12-13. Defendants' argument is once again premised upon a misstatement of plaintiffs' claims. The question is not whether the mere purchase of FPI is an unfair practice, but whether it is unfair for defendants to self-deal by arranging for kickbacks from Assurant and passing along the cost of those kickbacks to borrowers. The Court agrees with other courts to confront this issue that "[w]hether a practice is unfair in the context of legislative policy, or whether harms outweigh utilities, are questions capable of classwide resolution." Ellsworth, 2014 WL 2734953, at *28 (certifying UCL class); see also Lane, 2013 WL 3187410 (same); Hofstetter, 2011 WL 1225900 (same).

The Court thus concludes that common issues predominate as to liability on plaintiffs' UCL claim.

### (ii)     Affirmative Defenses

Defendants assert various affirmative defendants and contend that proof of these defenses will require individualized evidence, rendering individualized questions predominant. Opp'n Mot. Cert. Class at 13. Specifically, defendants assert that the equitable defenses of waiver, unclean hands, and failure to mitigate damages, as well as the defenses of first material breach, voluntary payment, and the filed-rate doctrine, raise significant individualized questions. Id. at 13-15.

The Court concludes that these affirmative defenses do not defeat predominance. First, to the extent that the filed rate doctrine applies to plaintiffs' claims, Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 18 (2d Cir. 1994) ( "[A]ny 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|----------|------------------------|------|---------------|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING  LLC ET AL. | | |

judicial proceedings brought by ratepayers."), its application will be demonstrated through common proof, not through proof of the actions of any individual borrower.

Second, defendants' arguments concerning unclean hands, Opp'n Cert. Class at 15 ("[E]ach putative class member has failed to maintain his own insurance coverage, necessitating . . . LPI policies."), voluntary payment, id. at 14 ("Under both California and Florida law, '[p]ayments voluntarily made, with knowledge of the facts, cannot be recovered.' " (citations omitted)), and waiver, id. ("[M[any borrowers paid for LPI despite being notified of its disadvantages[] [and] [o]ther borrowers . . . may have acquiesced in LPI[.]"), again misconstrue the nature of plaintiffs' claims.  As discussed above, plaintiffs do not challenge defendants' mere decision to purchase FPI; they challenge defendants' decision to purchase FPI allegedly inflated by secret kickbacks. No borrower was notified of this alleged scheme.  In any event, as the Lane court explained in nearly identical circumstances:

> The success or failure of the potential defenses is susceptible to common methods of proof.  The basic facts are common to the class: class members had similar contracts and received the same form notice of lapsed insurance; they failed to act in response to receiving multiple notices; defendant eventually force-placed insurance procured from [captive insurers] on class members' properties; defendant then charged class members an allegedly inflated premium for the insurance and received a percent of the premium as a commission or kickback . . . . Whether and to what extent class members were adequately warned of the commissions, could have avoided the force-placement of insurance (and payment of the commission), or accepted the benefits of the force-placed insurance is a matter for trial, or summary judgment, based on common methods of proof.

2013 WL 3187410, at *8.  Here, the contracts are uniform, notices concerning the purchase of FPI did not vary materially, Opp'n Cert. Class at 3 ("Nearly all of the notices (1) disclose that GT [Servicing's] affiliate will receive a commission or compensation, (2) note that LPI may be significantly more expensive than a voluntary policy, and (3) urge the borrower to avoid LPI and obtain voluntary coverage."), and defendants force-place insurance pursuant to uniform practices that did not entail individual underwriting.

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|----------|------------------------|------|---------------|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

Moreover, even assuming the defense of unclean hands applies where the Uniform Instruments expressly contemplated borrowers' failure to maintain insurance, this defense would be susceptible to common proof since, by definition, defendants only force-placed insurance when borrowers' voluntary coverage lapsed.

The defense of first material breach is likewise susceptible of classwide proof. Defendants assert that the Florida doctrine of first material breach "bar[s] a party guilty of the first material breach of a contract from suing for its enforcement." Opp'n Mot. Cert. Class at 14 (citing <u>CFBP, LLC v. U.S. Bank, Nat. Ass'n</u>, 800 F. Supp. 2d 1169, 1182 (M.D. Fla. 2011)). However, Florida courts also recognize that where one party breaches a contract, but the other party nonetheless continues to perform under that contract, the party who continued to perform may not rely on the prior breach as a defense. <u>See Hamilton</u>, 6 F. Supp. 3d at 1309. Accordingly, the predominating, threshold question is whether defendants' issuance of FPI policies constitutes continued performance under the Uniform Instruments sufficient to bar defendants from relying on plaintiffs' prior breaches.

Finally, the mitigation defense relies on the argument that a borrower may have "purposefully acquiesced in LPI." Opp'n Mot. Cert. Class at 15. As discussed above, this acquiescence argument misconstrues plaintiffs' claims. To the extent the defense applies, the Court agrees with the conclusion of the <u>Ellsworth</u> court that "[t]his is not a defense that requires substantial cross-examination on individual facts. Either a borrower paid or did not pay the cost that [defendants] passed on. As to Defendants' contention that it is important to know what the borrower knew individually, the main information about what the borrower knew is contained in [defendants'] notices warning of the imminent placement of FPI." 2014 WL 2734953, at *29. In any event, the Court finds that any mitigation issues are less substantial than issues that will be subject to generalized proof—namely, whether defendants' issued FPI policies pursuant to a uniform kickback scheme.

In light of the foregoing, the Court concludes that proof of affirmative defenses does not defeat the predominance of common issues as to liability.

### (iii)   Damages

**CIVIL MINUTES - GENERAL**    'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

Under Comcast Corp. v. Behrend, courts can only certify a Rule 23(b)(3) class if there is evidence demonstrating the existence of a classwide method of awarding relief that is consistent with the plaintiffs' theory of liability. Forrand v. Federal Exp. Corp., No. CV 08–1360 DSF, 2013 WL 1793951, at *3 (C.D. Cal. 2013) ("As the Supreme Court reemphasized in Comcast, in order for Rule 23(b)(3)'s predominance requirement to be satisfied, a plaintiff must bring forth a measurement method that can be applied classwide *and* that ties the plaintiff's legal theory to the impact of the defendant's allegedly illegal conduct."); Roach v. T.L. Cannon Corp., 2013 WL 1316452 (N.D. N.Y. 2013) ("The failure of the proponent of the class to offer a damages model that was susceptible of measurement across the entire class for purposes of Rule 23(b)(3) was fatal to the certification question."). Otherwise, the plaintiffs have not met their burden of introducing evidence showing that common questions predominate. Comcast, 133 S.Ct. at 1432 ("The party must also satisfy through *evidentiary proof* at least one of the provisions of Rule 23(b).") (emphasis added).

Here, plaintiffs contend that they "challenge the entire kickback retained by Defendants as improper and unearned." Am. Mot. Cert. Class at 22-23. In light of this theory of liability, plaintiffs assert that "calculation of damages on an individual or class-wide basis will be a mechanical task (premium x commission percentage)." Id. at 24. In their reply briefing, plaintiffs state that at least three other courts certifying FPI class actions have accepted this damages model. Reply Mot. Cert. Class at 21 (citing Lane, 2013 WL 3187410, at *9; Williams, 280 F.R.D. at 670–71; Ellsworth, 2014 WL 2734953, at *25). Plaintiffs, however, concede that these three courts relied on an expert report prepared by economist Birny Birnbaum—a report that plaintiffs have not provided to this Court.

Defendants' contentions aside, the Court finds that plaintiffs have not met their burden under Comcast to proffer evidence of a damages measurement method that can be applied classwide. Although it appears that Birnbaum has proffered an adequate model of damages in similar FPI cases, the Court cannot conclude that this model is adequate without evidence of the data upon which Birnbaum relies and consideration of whether that data is pertinent to the facts of *this* case. Absent Birnbaum's expert report, plaintiffs simply have not proffered a cognizable class-wide methodology.

**CIVIL MINUTES - GENERAL**  **'O'**

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

This lack of evidence compels the conclusion that certification for either the Florida or California class is not appropriate at present because the requirement of predominance is not satisfied. The denial of class certification is without prejudice, however, because the Court cannot make a final determination on the present record regarding whether predominance can be satisfied. Accordingly, plaintiffs may make a renewed motion for class certification after presenting expert testimony demonstrating that common questions predominate regarding classwide relief.

> **b.    Superiority**

Rule 23(b)(3) sets forth four relevant factors for determining whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These factors include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Id.

"[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." Zinser, 253 F.3d at 1190 (internal quotation marks and citation omitted).

Defendants contend that class treatment is not superior because the class would be unmanageable and certification of a Florida class would be inconvenient for Florida residents. Opp'n Mot. Cert. Class at 18-19. Defendants' manageability arguments rests

**CIVIL MINUTES - GENERAL**      **'O'**

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

on the proposition that individualized issues on the parties' claims and defenses predominate.  Because the Court has concluded that common issues predominate as to liability, this contention only has merit to the extent that plaintiffs have failed to demonstrate—on this record—that damages are capable of class-wide proof.  As to the convenience of Florida residents, courts in California routinely certify multi-state classes.  See, e.g., Ellsworth, 2014 WL 2734953 (certifying California and New Mexico classes).

Assuming that plaintiffs come forward with an adequate damages model, the Court concludes that class litigation is superior to other methods of adjudication in this case.

### D.     Whether the Class is Ascertainable

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the 2party seeking class certification must demonstrate that an identifiable and ascertainable class exists."  Mazur v. eBay, Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009); O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 331, 319 (C.D. Cal. 1998) ("A class definition should be precise, objective, and presently ascertainable.").  An ascertainable class exists if it can be identified through reference to objective criteria, and subjective standards such as a class member's state of mind should not be used when defining the class.  Manual for Complex Litigation (Fourth) § 21.222.

As a preliminary matter, plaintiffs request that the Court modify the proposed class definitions accordingly:

Specifically excluded from both the California Class and Florida Class are: (a) any officers, directors or employees of Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; (e) any counsel of record for any party; **and/or charges collected or extinguished through foreclosure, short-sale agreement, or grant of a deed in lieu of foreclosure or through cancellation or waiver by borrower's agreement with the lender.**

**CIVIL MINUTES - GENERAL**       'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|---|---|---|---|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

Reply Mot. Cert. Class at 23.

In <u>Lane</u>, the court concluded that such a modification was appropriate, since "[b]orrowers who were charged and did pay [for FPI] should be able to seek damages or restitution, even if they are no longer obligated for charges going forward (where, for example, the subject property was eventually foreclosed upon)." 2013 WL 3187410, at *10. However, the <u>Lane</u> court modified the class definition because plaintiffs proffered affirmative evidence demonstrating that the defendant in that action—Wells Fargo—could "identify borrowers who have been charged for insurance but have been reimbursed or will not pay the charged premium." <u>Id.</u> In contrast, defendants in the instant case represent that "[w]hen LPI premiums are satisfied, [defendants'] systems of record display only a generic transaction code indicating the premiums have been paid. The transaction code does not reflect whether the LPI premium was paid by the borrower or 'collected or extinguished' by some other means. The only way to determine whether any LPI premiums were paid by borrowers is to individually review each file." Sur-Reply Mot. Cert. Class at 2.

It appears to the Court that while plaintiffs' proposed class definitions, as modified, render the class ascertainable "by reference to objective criteria," it may not be administratively feasible to identify class members. <u>Shepard v. Lowe's HIW, Inc.</u>, No. C 12-3893 JSW, 2013 WL 4488802, at *2 (N.D. Cal. Aug. 19, 2013) ("The class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member."); <u>see also</u> Newberg on Class Actions § 3:3 (5th Ed.2013) ("Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry.") Moreover, in proposing this modification in their reply briefing, plaintiffs do not address administrative feasibility. Reply Mot. Cert. Class at 22-23.

Thus, although the Court is inclined to modify the class definition, as indicated in <u>Lane</u>, the record before the Court does not appear to support a finding of ascertainability.[9]

---

[9] As noted above, the proposed adjustment of the class definition renders Longest a class member by eliminating the exclusion of persons who "entered into a loan

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
| --- | --- | --- | --- |
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

### E.     Appointment of Class Counsel

Rule 23(g)(1) requires the Court to appoint class counsel.  Rule 23(g) provides, inter alia, that courts must consider the following factors in appointing class counsel:

(i)     the work counsel has done in identifying or investigating potential claims in the action;

(ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)     counsel's knowledge of the applicable law; and

(iv)     the resources that counsel will commit to representing the class.
Fed. R. Civ. P. 23(g).

The Court is satisfied that, in the event that plaintiffs can remedy the shortcomings identified herein, plaintiffs' counsel of record, Ridout Lyon + Ottoson, LLP ("Ridout") and Zimmerman Reed, PLLP meet the criteria of Rule 23(g) and may serve as class counsel.  Ridout has represented plaintiffs since the inception of this action.  Marker Decl. at ¶ 6.  Further, both firms have significant experience in litigating class actions, id. Ex. C (Ridout firm resume); Robinovitch Decl. Ex. A (Zimmerman Reed, PLLP firm resume), and otherwise satisfy the requirements of Rule 23(g), see id.  Finally, there is no reason to believe that the firms lack sufficient resources to vigorously represent the proposed classes.  See id.

## V.     CONCLUSION

---

modification involving the subject mortgage loan."

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-08150-CAS(RZx) | Date | June 19, 2015 |
|----------|------------------------|------|---------------|
| Title | CARLENE LONGEST V. GREEN TREE SERVICING LLC ET AL. | | |

In accordance with the foregoing, the Court DENIES WITHOUT PREJUDICE plaintiffs' motion to certify California and Florida classes challenging defendants' force-placed insurance practices.

Plaintiffs shall have until **July 30, 2015** to file supplemental briefing addressing (1) ascertainability and (2) damages. Defendants shall have until **August 13, 2015** to file a response to plaintiffs' submission. Briefing from both parties shall only address the two aforementioned issues, and **shall not exceed 15 pages**.

IT IS SO ORDERED.

|   | 00 | : | 00 |
|---|----|----|----|
| Initials of Preparer | | CMJ | |